# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77121-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY ALLEN HOLLY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 25, 2019 |
| | ) | |

VERELLEN, J. — Gregory Holly appeals his conviction for first degree child molestation. Holly argues the prosecutor committed misconduct during closing argument and his defense counsel provided ineffective assistance of counsel in failing to object to the prosecutor's comments. Holly fails to show the prosecutor's comments were so flagrant and ill intentioned that a curative instruction could not have alleviated any prejudice. And Holly does not show defense counsel provided prejudicial deficient representation because he failed to object to the prosecutor's comments.

We affirm Holly's conviction but remand for the trial court to strike the $200 criminal filling fee under State v. Ramirez.[1]

---

[1] 191 Wn.2d 732, 426 P.3d 714 (2018).

## FACTS

Beginning in 2011, Holly lived in Gold Bar, Washington with his partner, Mary Cassell. T.C. and B.O. are related to Cassell. In July 2014, B.O. told her caregivers, Jeff Bird and Lindsie Wilks, about incidents involving her and Holly. Wilks and Bird confronted Holly about the allegations. At the time of the confrontation, Bird was wearing a holstered handgun, but he did not remove the gun from the holster. Bird told Holly to leave the house. Holly left that night.

The State charged Holly with three counts of first degree child molestation as to B.O., two counts of first degree child molestation as to T.C., and one count of first degree rape of a child as to T.C.

During closing argument, the prosecutor referred to the confrontation between Bird, Wilks, and Holly concerning B.O.'s allegations. The prosecutor stated:

> You heard testimony of a gun, that Jeff has a gun. I submit to you honestly[,] I think they handled themselves better than I probably could in the same circumstance. There was danger. Sounds [like] Lindsie was probably hitting Greg once they got to the Gold Bar house concerning what was alleged. A lot of screaming[,] and then Jeff orders Greg out and he leaves. Probably wisely.
>
> I submit to you that's just another little nugget of consciousness of guilt for Greg Holly. You can argue of course he was fearful or he didn't want to cause trouble, but it's another step of consciousness of guilt. Just go to mom's house. It's because he did these things.[2]

A jury found Holly guilty of two counts of first degree child molestation as to T.C. and not guilty as to the other counts.

Holly appeals.

---

[2] Report of Proceedings (RP) (May 12, 2017) at 41-42.

ANALYSIS

Prosecutorial Misconduct

Holly contends his right to a fair trial was violated because the State committed prosecutorial misconduct during closing argument. Holly argues the prosecutor's conduct was improper because he appealed to the jury's passion and prejudice and expressed a personal opinion on Holly's guilt and the credibility of B.O. and T.C.

"Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard."[3] To prevail on a claim of prosecutorial misconduct, the defendant bears the burden of establishing that the conduct was both improper and prejudicial.[4] Although "[t]he State has wide latitude to argue inferences from the evidence," a prosecuting attorney commits misconduct by merely appealing to the jury's passion or prejudice.[5] A prosecutor also commits misconduct by expressing an opinion as to the defendant's guilt or a witnesses' credibility.[6]

Here, during closing argument, the prosecutor referred to the presence of a gun during the confrontation between Holly and B.O.'s caregivers, Bird and Wilks. At the time of the confrontation, Bird was carrying a gun but did not remove the gun from its holster. The prosecutor stated, "You heard testimony of a gun, that Bird had

---

[3] State v. Brett, 126 Wn.2d 136, 174, 892 P.2d 29 (1995).

[4] State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

[5] State v. Pierce, 169 Wn. App. 533, 552-53, 280 P.3d 1158 (2012) (quoting State v. Gregory, 158 Wn.2d 759, 808, 147 P.3d 1201 (2006)).

[6] State v. Lindsay, 180 Wn.2d 423, 437, 326 P.3d 125 (2014).

a gun. I submit to you, honestly, I think they handled themselves better than I probably could in the same circumstance."[7]

Although the comment suggesting the prosecutor's personal view of Bird and Wilk's conduct is inappropriate, it does not rise to the level of prejudicial misconduct. The prosecutor did not express an opinion as to Holly's guilt or B.O. and T.C.'s credibility. Neither does Holly establish that the prosecutor was appealing to the jury's passion or prejudice. Rather, the prosecutor implied he might have responded differently than Wilks and Bird when they confronted Holly about the allegations.

As to prejudice, Holly did not object to the comment during trial. The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury."[8]

The comments were not flagrant and ill intentioned. The prosecutor's statement that Bird and Wilks "handled themselves better than I probably could in the same circumstance" was isolated. And the statement concerning Holly's consciousness of guilt as evidenced by his acquiescence to Bird's order to leave the house was a reasonable inference from the evidence.

When reviewing a claim of prosecutorial misconduct, we should consider the entire closing argument for context.[9] The prosecutor told the jurors they were the

---

[7] RP (May 12, 2017) at 41.

[8] Thorgerson, 172 Wn.2d at 443 (quoting State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994)).

[9] Id. at 442.

sole judges of the credibility of the witnesses and urged them to apply their common sense to the totality of the circumstances.

Holly does not establish the prosecutor improperly appealed to the jury's passion or prejudice or expressed a personal opinion on guilt or credibility. And most important, he does not show that the prosecutor's comments had a substantial impact on the jury's verdict nor that an instruction could not have cured any resulting prejudice.

Ineffective Assistance of Counsel

Holly argues he received ineffective assistance of counsel because his attorney failed to object to the prosecutor's comments during closing argument.

We review ineffective assistance of counsel claims de novo.[10] "Ineffective assistance of counsel is a fact-based determination, and we review the entire record in determining whether a defendant received effective representation at trial."[11]

To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant.[12] There is a strong presumption that defense counsel's representation was not deficient.[13] But this presumption may be overcome "where there is no conceivable legitimate tactic explaining counsel's

---

[10] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[11] State v. Carson, 184 Wn.2d 207, 215-16, 357 P.3d 1064 (2015).

[12] State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

[13] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004) (citing State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995)).

performance."[14] "The burden is on a defendant alleging ineffective assistance of counsel to show deficient representation based on the record established in the proceedings below."[15]

Holly fails to show there is no conceivable legitimate tactic that explains defense counsel's decision not to object and thereby avoid emphasizing the prosecutor's tangential comments. It is not an uncommon practice for attorneys to refrain from objecting to statements made in closing argument.[16] The prosecutor's expression of his personal view was isolated, not egregious, and made in context the State's legitimate consciousness of guilt theory. Because Holly does not meet his burden to prove deficient representation, his claim of ineffective assistance of counsel fails.

Filing Fee

Holly asks this court to strike the $200 criminal filing fee under Ramirez and House Bill (HB) 1783. HB 1783 prohibits the imposition of the $200 filing fee on indigent defendants.[17] Although HB 1783 became effective June 7, 2018, in

---

[14] Id.

[15] McFarland, 127 Wn.2d at 335.

[16] See Pers. Restraint Petition of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004) ("Defense counsel's decision to refrain from objecting during the prosecutor's closing argument was not deficient performance. Lawyers do not commonly object during closing argument 'absent egregious misstatements.' A decision not to object during summation is within the wide range of permissible professional legal conduct.") Depending on the specific circumstances, appearing too hostile during closing argument may diminish one's likeability with the jury at a crucial stage of the proceeding. See Chris Zulanas, How to Deliver an Effective Closing Argument, 39 AM. J. TRIAL ADVOC. 365, at 366 (2015).

[17] LAWS OF 2018, ch. 269, § 17; Ramirez, 191 Wn.2d at 739.

<u>Ramirez</u>, our Supreme Court recognized that HB 1783 applies prospectively to all cases with pending direct appeals.[18]

Here, the trial court found Holly indigent and imposed the $200 filing fee. Although Holly was sentenced before our Supreme Court passed <u>Ramirez</u>, the State concedes remand is appropriate to strike the $200 filing fee. We accept the State's concession.

## CONCLUSION

We affirm Holly's conviction but remand for the trial court to strike the $200 criminal filing fee.

WE CONCUR:

---

[18] <u>Ramirez</u>, 191 Wn.2d at 749.