IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35183-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON LEE PRIEST, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Jason Priest appeals his convictions for second degree burglary, first degree theft of commercial metal property, and first degree malicious mischief, stemming from the theft of copper wire from a cell phone tower site in Sprague, Washington. We affirm the convictions, but remand for resentencing consistent with the terms of this decision.

FACTS[1]

On May 8, 2015, a technician inspecting a cell phone tower site in Sprague,

Washington, noticed that it had been vandalized and stripped of copper wire. A police

investigation uncovered forensic evidence leading to two suspects. Both suspects

confessed their involvement in the crime. They also implicated additional suspects.

One of those suspects was Jason Priest.

Mr. Priest was arrested and charged with one count of second degree burglary,

one count of first degree theft of commercial metal property, and one count of first degree

malicious mischief. Each offense was alleged to have occurred between March 1 and

May 8, 2015.

The cell tower technician testified at trial. He explained that the damage to the

site was extensive and would cost "[s]omewhere around $33,000" just to clean it up.

RP (Mar. 22, 2017) at 21-22. The cost to replace the stolen copper wire was much greater

and would run into the "hundreds of thousands" of dollars. *Id*. at 21. The technician also

testified that he was not sure when the damage and theft occurred, as the tower had been

out of use at the time of his May 8, 2015, visit and he had not been to the site for several

---

[1] Because Mr. Priest's appeal involves a challenge to the sufficiency of the evidence, we construe the facts in the light most favorable to the State. *See State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

weeks or months. *Id*. at 24.

The State also presented testimony from the two initial suspects, who ended up cooperating in the case against Mr. Priest. The cooperating witnesses testified that they began stealing from the tower site in 2015.[2] One of the two witnesses explained, "[i]t was just getting into springtime" when he first went out to the site with Mr. Priest. *Id*. at 28-29. Both witnesses testified that Mr. Priest was extensively involved in the thefts. According to one of the cooperating witnesses, the site was looted approximately 20 times and Mr. Priest participated "[p]retty much every single time." *Id*. at 43.[3]

In addition to the cooperating suspects, the State presented testimony from a jail house informant. The informant claimed Mr. Priest had confessed his involvement in the wire theft and that Mr. Priest had estimated the damage to the cell phone tower site was $38,000. RP (Mar. 23, 2017) at 19.[4]

---

[2] On cross-examination, one of the cooperating witnesses stated he first went out to the cell tower site in 2014. However, the bulk of the testimony was that the thefts took place in 2015. Based on the testimony of the cell tower technician, the thefts could not have taken place in 2014, as the technician had at least visited the site in December 2014 or January 2015 and had not seen any damage at that time. *Id*. at 24-25.

[3] The other cooperating witness testified that looting took place on less than 10 occasions. *Id*. at 39.

[4] When asked what Mr. Priest was referring to when he mentioned $38,000, the informant stated, "I just remember him saying $38,000, and then like in damages to the building. That's all I remember hearing him say." *Id*.

3

The jury was instructed that the State bore the burden of proving the charged offenses occurred between March 1 and May 8, 2015. Mr. Priest was found guilty on all three counts.

At sentencing, the State alleged Mr. Priest had multiple prior convictions, resulting in an offender score of 9 for burglary and 8 for theft and malicious mischief. Mr. Priest challenged his offender score, arguing that at least some of the convictions listed on his stipulated understanding of criminal history had washed out and could not be considered. The State countered that the convictions had not washed out because Mr. Priest had intervening criminal convictions that were not disclosed on the stipulation. It appears that evidence corroborating the State's position was not entered into the record. Nevertheless, the court accepted the State's position and sentenced Mr. Priest to 68 months of imprisonment for the first degree burglary conviction, 43 months for the first degree theft conviction, and 43 months for the malicious mischief conviction. All three sentences were ordered to run concurrently.

## ANALYSIS

*Sufficiency of the evidence*

Mr. Priest claims the trial evidence was insufficient in two respects: (1) it failed to establish that the damage caused to the cell phone tower site exceeded $5,000, as required for his first degree theft and malicious mischief convictions, and (2) it did not establish

4

that the offense conduct took place between March 1 and May 8, 2015, as specified in the jury instructions.[5] Reviewing the evidence in the light most favorable to the State, we reject these contentions.

The State's evidence was readily sufficient as to the amount of damage. The technician testified that it would cost hundreds of thousands of dollars to clean up the cell tower site and replace the stolen wire. This easily surpassed the $5,000 damage threshold for first degree theft and malicious mischief.[6] Although Mr. Priest may not have been involved in all of the damage, the testimony indicated he was involved in most aspects of the theft. Thus, it is fair to infer that Mr. Priest's involvement far exceeded the $5,000 damage threshold. Indeed, Mr. Priest himself admitted to causing approximately $38,000 in damage to the cell tower site. Based on the totality of the record, the State presented ample proof of the requisite damage amount.

---

[5] The State assumed the burden of proving the offense conduct took place between March 1 and May 8 by failing to object to the inclusion of this date range in the court's to-convict instructions. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998).

[6] As charged, a conviction for first degree malicious mischief required the State to prove Mr. Priest caused physical damage to the property of another in an amount exceeding $5,000. RCW 9A.48.070(1)(a). The conviction for first degree theft required the State to prove Mr. Priest committed theft of "[c]ommercial metal property, nonferrous metal property, or private metal property . . . and the costs of the damage to the owner's property exceed" $5,000. RCW 9A.56.030(1)(d).

The State's evidence was also sufficient to establish that Mr. Priest's offenses took place during the period between March 1 and May 8, 2015. The tower technician discovered the theft and damage on May 8. Thus, the offense must have taken place before that date. According to the technician, he had not been to the tower site for several weeks or months. One can infer that, at the time of the technician's previous visit, no thefts had yet occurred. Thus, the offense must have taken place in the weeks or months preceding May 8, 2015. One of the two cooperating witnesses testified that the thefts began around springtime 2015. Because March is the first month of spring, the jury had a nonspeculative basis for finding Mr. Priest's offense conduct occurred between March 1 and May 8.[7]

*Offender score at sentencing*

The State agrees that the record fails to reflect the evidence relied on by the trial court to overrule Mr. Priest's offender score objections. We accept this concession. The State is obliged to prove prior convictions at sentencing. *State v. Hunley*, 175 Wn.2d 901, 915, 287 P.3d 584 (2012). A "prosecutor's bare allegations" regarding a defendant's prior criminal convictions are insufficient. *Id.* We therefore remand this matter for resentencing and the consideration of additional evidence, if any. *State v. Wilson*, 170

---

[7] Although some of the testimony indicated the thefts occurred over a longer time period, the jury was free to disregard such discrepancies.

No. 35183-1-III
*State v. Priest*

Wn.2d 682, 691, 244 P.3d 950 (2010) (The remedy for a miscalculated offender score is resentencing.); *State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014) (New evidence of prior convictions is permitted on remand for resentencing.).

## CONCLUSION

We affirm the convictions, but remand for resentencing. At resentencing, the trial court shall reconsider Mr. Priest's offender score and shall also consider whether Mr. Priest's $200 criminal filing fee and $100 DNA (deoxyribonucleic acid) collection fee should be struck pursuant to recent changes to RCW 36.18.020(2)(h) and RCW 43.43.7541 and the Supreme Court's decision in *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). Mr. Priest's request to deny appellate costs is granted.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____        _____
Lawrence-Berrey, C.J.                   Fearing, J.

7