This opinion was filed for record

at 8:00 am on Sept 20, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 2 0 2018

CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

               Respondent,

v.

DAVID ANGEL RAMIREZ,

               Petitioner.

NO. 95249-3

EN BANC

Filed SEP 2 0 2018

STEPHENS, J.—In *State v. Blazina*, 182 Wn.2d 827, 839, 344 P.3d 680 (2015), we held that under former RCW 10.01.160(3) (2015), trial courts have an obligation to conduct an individualized inquiry into a defendant's current and future ability to pay before imposing discretionary legal financial obligations (LFOs) at sentencing. This case provides an opportunity to more fully describe the nature of such an inquiry. An adequate inquiry must include consideration of the mandatory factors set forth in *Blazina*, including the defendant's incarceration and other debts, and the court rule GR 34 criteria for indigency. *Id.* at 838. The trial court should also address what we described in *Blazina* as other "important factors" relating to

the defendant's financial circumstances, including employment history, income, assets and other financial resources, monthly living expenses, and other debts. *Id.*

The trial court in David A. Ramirez's case failed to conduct an adequate individualized inquiry before imposing LFOs on Ramirez. While this *Blazina* error would normally entitle Ramirez to a resentencing hearing on his ability to pay discretionary LFOs, such a limited resentencing is unnecessary in this case. Engrossed Second Substitute House Bill 1783, 65th Leg., Reg. Sess. (Wash. 2018) (House Bill 1783), which amended two statutes at issue and now prohibits the imposition of certain LFOs on indigent defendants, applies prospectively to Ramirez's case on appeal. We reverse the Court of Appeals and remand for the trial court to strike the improperly imposed LFOs from Ramirez's judgment and sentence.

## FACTS AND PROCEDURAL HISTORY

A jury convicted Ramirez of third degree assault and possession of a controlled substance, and found by special verdict that he committed the assault with sexual motivation and displayed an egregious lack of remorse. Clerk's Papers (CP) at 63-66.

At sentencing, the State sought an exceptional sentence of 10 years based on Ramirez's prior record and offender score. 2 Verbatim Report of Proceedings (Mar. 7, 2016) (VRP) at 346. Following the State's argument for imposing an exceptional

sentence, Ramirez took the opportunity to directly address the trial court. Ramirez explained to the court that despite the State's representations, he "was doing everything right" before his arrest. *Id.* at 360. Ramirez shared that prior to his arrest, he was working a minimum wage job at Weyerhaeuser as part of a "temporary service team" and paying all his household bills, including a DirecTV subscription that included Seattle Seahawks games. *Id.* at 359-60, 362-63. Ramirez had opened a bank account for the first time in his life, was planning on getting his driver's license, and had moved into his own apartment with the help of his wife. *Id.* at 360, 362. Ramirez discussed these favorable aspects of his life in an effort to show that despite his criminal history, he did not deserve an exceptional sentence. Suppl. Br. of Pet'r at 3. He lamented that because of his drug relapse and arrest, "I missed out on all of that." VRP at 363.[1]

The trial court sentenced Ramirez to five years for the third degree assault conviction and two years for possession of a controlled substance, to be served consecutively. *Id.* at 372-73. The trial court also imposed $2,900 in LFOs, including a $500 victim assessment fee, a $100 DNA (deoxyribonucleic acid) collection fee, a $200 criminal filing fee, and discretionary LFOs of $2,100 in attorney fees, and set

---

[1] Ramirez's full statement was, "I missed out on all of that because I screwed up before even the first Seahawk game. That was the weekend that I screwed up. It was the Saturday before the first Seahawk game." VRP at 363.

a monthly payment amount of $25. *Id.* at 375-76. After the court announced the sentence, Ramirez presented a notice of appeal and a motion for an order of indigency, which the court granted. *Id.* at 373; Suppl. CP at 1-4. According to the financial statement in his declaration of indigency, Ramirez had no source of income or assets and no savings, and owed more than $10,000 at the time of sentencing (apparently previously imposed court costs and fees). Suppl. CP at 2-4.

Prior to imposing LFOs, the trial court asked only two questions relating to Ramirez's current and future ability to pay, both of which were directed to the State. First, the court asked, "And when he is not in jail, he has the ability to make money to make periodic payments on his LFOs, right?" VRP at 348. The State responded that Ramirez had the ability to pay his LFOs "[w]hen he's not in jail and when he is in jail," noting that Ramirez could work while incarcerated. *Id.* The trial court then asked the State to once more confirm that LFOs were appropriate in Ramirez's case: "But as far as you are concerned, the LFOs should be imposed." *Id.* The State answered, "Yes." *Id.*

The trial court did not directly ask Ramirez or his counsel about his ability to pay at any point during sentencing. The only statement made by Ramirez concerning his ability to pay came after the trial court announced its decision to impose discretionary costs. After finding that Ramirez had "the ability to earn money and

-4-

make small payments on his financial obligations," the court listed the specific costs imposed and ordered Ramirez to pay "25 bucks a month starting [in] 60 days." *Id.* at 375-76. Ramirez then asked, "How am I going to do that from inside?" *Id.* at 376. Ramirez's counsel responded, "I will explain." *Id.* The discussion then moved on to a different subject.[2]

On appeal, Ramirez argued that the trial court failed to make an adequate individualized inquiry into his ability to pay before imposing discretionary LFOs, contrary to *Blazina*, 182 Wn.2d at 837-38.[3] In a 2-1 unpublished opinion, Division Two of the Court of Appeals affirmed the trial court, holding that the court "conducted an adequate individualized inquiry and did not err in imposing the discretionary LFOs." *State v. Ramirez*, No. 48705-5-II, slip op. at 13 (Wash. Ct. App. Oct. 24, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048705-5-II%20Unpublished%20Opinion.pdf. In reviewing the trial court's decision to impose discretionary LFOs on Ramirez, the Court of Appeals majority applied an overall abuse of discretion standard; it cited the information

---

[2] Ramirez's counsel made only one mention of LFOs, in correcting the trial court's original estimate of the amount of attorney fees. The court initially stated that these discretionary costs totaled $900, but Ramirez's counsel clarified that $2,100 was the correct amount. VRP at 375.

[3] Ramirez's appeal additionally raised several guilt-phase claims of error, which the Court of Appeals rejected. *State v. Ramirez*, No. 48705-5-II, slip op. at 7-11, 13-15 (Wash. Ct. App. Oct. 24, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2048705-5-II%20Unpublished%20Opinion.pdf. These issues are not before us.

offered by Ramirez in his statement to the trial court as sufficient grounds for finding Ramirez able to pay LFOs. *Id.* at 12-13.

In dissent, Chief Judge Bjorgen argued that the question of whether a trial court made an adequate inquiry into a defendant's ability to pay discretionary LFOs should be reviewed de novo, not for an abuse of discretion. *Id.* at 16 (Bjorgen, C.J., dissenting). Applying the de novo standard, Chief Judge Bjorgen concluded that the trial court's inquiry into Ramirez's financial status fell short of the *Blazina* standards. *Id.* at 19.

On March 7, 2018, we granted Ramirez's petition for review "only on the issue of discretionary [LFOs]." Order Granting Review, No. 95249-3 (Wash. Mar. 7, 2018). On March 27, 2018, just weeks after we granted Ramirez's petition, House Bill 1783 became law. LAWS OF 2018, ch. 269. House Bill 1783's amendments relate to Washington's system for imposing and collecting LFOs and are effective as of June 7, 2018. House Bill 1783 is particularly relevant to Ramirez's case because it amends the discretionary LFO statute to prohibit trial courts from imposing discretionary LFOs on defendants who are indigent at the time of sentencing. *Id.* at § 6(3).

ANALYSIS

This case concerns Washington's system of LFOs, specifically the imposition of discretionary LFOs on individuals who lack the current and future ability to pay them. State law requires that trial courts consider the financial resources of a defendant and the nature of the burden imposed by LFOs before ordering the defendant to pay discretionary costs. *See* RCW 10.01.160(3).

We addressed former RCW 10.01.160(3) in *Blazina* and held that the statute requires trial courts to conduct an individualized inquiry into the financial circumstances of each offender before levying any discretionary LFOs. 182 Wn.2d at 839. As Ramirez's case demonstrates, however, costs are often imposed with very little discussion. We granted review in this case to articulate specific inquiries trial courts should make in determining whether an individual has the current and future ability to pay discretionary costs.

After we granted review, the legislature enacted House Bill 1783, which amends former RCW 10.01.160(3) to categorically prohibit the imposition of any discretionary costs on indigent defendants. LAWS OF 2018, ch. 269, § 6(3). House Bill 1783 also amends the criminal filing fee statute, former RCW 36.18.020(2)(h) (2015), to prohibit courts from imposing the $200 filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h). According to Ramirez's motion for an order of

indigency, which the trial court granted, Ramirez unquestionably qualified as indigent at the time of sentencing: Ramirez had no source of income or assets and no savings, and owed more than $10,000 at the time of sentencing. Suppl. CP at 3-4.

This case presents two issues. The primary issue is whether the trial court conducted an adequate individualized inquiry into Ramirez's ability to pay, as required under *Blazina* and former RCW 10.01.160(3). A separate but related issue is whether House Bill 1783's statutory amendments apply to Ramirez's case on appeal.

I. The Trial Court Did Not Conduct an Adequate Individualized Inquiry into Ramirez's Current and Future Ability To Pay LFOs

The threshold issue in this case is whether the trial court performed an adequate inquiry into Ramirez's present and future ability to pay before imposing discretionary LFOs. In addressing this issue, we must decide what standard of review applies to a trial court's decision to impose discretionary LFOs. The Court of Appeals was seemingly split on this question, with the majority applying an overall abuse of discretion standard and the dissenting judge applying de novo review. We address the proper standard of review before turning to the merits of Ramirez's argument.

A. *The Adequacy of the Trial Court's Individualized Inquiry into a Defendant's Ability To Pay Discretionary LFOs Should Be Reviewed De Novo*

As Ramirez correctly points out, the question of whether the trial court adequately inquired into his ability to pay discretionary LFOs involves both a factual and a legal component. Suppl. Br. of Pet'r at 16. On the factual side, the reviewing court determines what evidence the trial court actually considered in making the *Blazina* inquiry. Chief Judge Bjorgen aptly observed that the factual determination can be decided by simply examining the record for supporting evidence.[4] *Ramirez*, slip op. at 17 (Bjorgen, C.J., dissenting). On the legal side, the reviewing court decides whether the trial court's inquiry complied with the requirements of *Blazina*. Both the majority and dissenting opinions below recognized that this legal inquiry merits de novo review. *See id.* at 13 n.4 ("[w]hether or not a trial court makes an individualized inquiry is reviewed de novo"), 17 (Bjorgen, C.J., dissenting) (describing this as "an unalloyed legal question").

---

[4] Ramirez criticizes Chief Judge Bjorgen for embracing a "clearly erroneous" standard of review for factual determinations, based on prior appellate decisions. *See* Suppl. Br. of Pet'r at 17 & n.6. Ramirez insists that "substantial evidence" is the correct Washington standard, while "clear error" applies in federal courts. *Id.* We believe the distinction is semantic in this context. The very case Ramirez cites as identifying different state and federal standards says, "[W]e review [factual findings] for substantial evidence, which is analogous to the 'clear error' test applied by the federal courts." *Steele v. Lundgren*, 85 Wn. App. 845, 850, 935 P.2d 671 (1997).

-9-

Given their shared recognition that de novo review applies to the question of whether the trial court complied with *Blazina*, the split in the Court of Appeals may be more a difference in emphasis than in substance. *Blazina* establishes what constitutes an adequate inquiry into a defendant's ability to pay under state law, and the standard of review for an issue involving questions of law is de novo. *State v. Hanson*, 151 Wn.2d 783, 784-85, 91 P.3d 888 (2004). Ramirez is correct that the *Blazina* inquiry is similar to other inquiries trial judges make that are subject to de novo review. *See* Suppl. Br. of Pet'r at 16-17 (citing *State v. Vicuna*, 119 Wn. App. 26, 30-31, 79 P.3d 1 (2003) (applying de novo review to determination of whether a conflict exists between attorney and client); *State v. Ramirez-Dominguez*, 140 Wn. App. 233, 239, 165 P.3d 391 (2007) (applying de novo review to determination of whether the defendant knowingly, intelligently, and voluntarily waived his right to a jury trial)).

That said, the trial court's ultimate decision whether to impose discretionary LFOs is undoubtedly discretionary. The trial court must balance the defendant's ability to pay against the burden of his obligation, which is an exercise of discretion. *State v. Baldwin*, 63 Wn. App. 303, 312, 818 P.2d 1116 (1991). But, discretion is necessarily abused when it is manifestly unreasonable or based on untenable grounds or reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). If the trial

-10-

court fails to conduct an individualized inquiry into the defendant's financial circumstances, as RCW 10.01.160(3) requires, and nonetheless imposes discretionary LFOs on the defendant, the trial court has per se abused its discretionary power. Stated differently, the court's exercise of discretion is unreasonable when it is premised on a legal error. The focus of Ramirez's argument for de novo review is squarely on the trial court's legal error in failing to conduct an individualized inquiry. Thus, while the State is correct that the abuse of discretion standard of review is relevant to the broad question of whether discretionary LFOs were validly imposed, de novo review applies to the alleged error in this case: the failure to make an adequate inquiry under *Blazina*.

B. *The Trial Court's Inquiry into Ramirez's Ability To Pay Discretionary LFOs Was Inadequate under* Blazina

The legal question before us is whether the trial court's inquiry into Ramirez's current and future ability to pay discretionary LFOs was adequate under *Blazina*. In *Blazina*, we held that former RCW 10.01.160(3) requires the trial court to conduct an individualized inquiry on the record concerning a defendant's current and future ability to pay before imposing discretionary LFOs. 182 Wn.2d at 839. We explained that "the court must do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry." *Id.* at 838. As part of this inquiry, the trial court is required to consider "important factors," such as

incarceration and the defendant's other debts, when determining a defendant's ability to pay. *Id.* Additionally, we specifically instructed courts to look for additional guidance in the comment to court rule GR 34, which lists the ways a person may prove indigent status for the purpose of seeking a waiver of filing fees and surcharges. *Id.*; *City of Richland v. Wakefield*, 186 Wn.2d 596, 606-07, 380 P.3d 459 (2016). As we further clarified, "if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." *Blazina*, 182 Wn.2d at 839.

Here, the record shows that the trial court asked only two questions concerning Ramirez's ability to pay LFOs, both of which were directed to the State. First, the court asked, "And when he is not in jail, he has the ability to make money to make periodic payments on his LFOs, right?" VRP at 348. The State responded, "When he's not in jail and when he is in jail," noting that Ramirez could work while incarcerated. *Id.* The court then asked the State for clarification on the LFO issue: "But as far as you are concerned, the LFOs should be imposed." *Id.* In response, the State simply answered, "Yes." *Id.* The record reflects that these two questions, directed to the State, are the only questions asked by the trial court relating to Ramirez's ability to pay discretionary LFOs before ordering him to pay $25 per month starting in 60 days. When Ramirez asked, "How am I going to do that from

inside?" *id.* at 376, the trial court said nothing. Ramirez's counsel said, "I will explain," and the court moved on. *Id.*

The court made no inquiry into Ramirez's debts, which his declaration of indigency listed as exceeding $10,000 at the time of sentencing (apparently previously imposed court costs and fees). Suppl. CP at 4. Nor does the record reflect that the trial court inquired into whether Ramirez met the GR 34 standard for indigency. Had the court looked to GR 34 for guidance, as required under *Blazina*, it would have confirmed that Ramirez was indigent at the time of sentencing—his income fell below 125 percent of the federal poverty guideline. As we explained in *Blazina*, "if someone does meet the GR 34 standard for indigency, courts should seriously question that person's ability to pay LFOs." 182 Wn.2d at 839; *Wakefield*, 186 Wn.2d at 607. The record does not reflect that the trial court meaningfully inquired into any of the mandatory *Blazina* factors.

The trial court also failed to consider other "important factors" relating to Ramirez's current and future ability to pay discretionary LFOs, such as Ramirez's income, his assets and other financial resources, his monthly living expenses, and his employment history. *Blazina*, 182 Wn.2d at 838. In *Blazina*, we held that "[t]he record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay," which requires the court to consider

"important factors," in addition to the mandatory factors discussed above. *Id.* The only information in the record about Ramirez's financial situation came during Ramirez's allocution and was offered to show how he had been putting his life in order prior to his arrest. The court made no inquiry.

Consistent with *Blazina*'s instruction that courts use GR 34 as a guide for determining whether someone has an ability to pay discretionary costs, we believe the financial statement section of Ramirez's motion for indigency would have provided a reliable framework for the individualized inquiry that *Blazina* and RCW 10.01.160(3) require. In determining a defendant's indigency status, the financial statement section of the motion for indigency asks the defendant to answer questions relating to five broad categories: (1) employment history, (2) income, (3) assets and other financial resources, (4) monthly living expenses, and (5) other debts. *See* Suppl. CP at 2-4. These categories are equally relevant to determining a defendant's ability to pay discretionary LFOs.

Regarding employment history, a trial court should inquire into the defendant's present employment and past work experience. The court should also inquire into the defendant's income, as well as the defendant's assets and other financial resources. Finally, the court should ask questions about the defendant's monthly expenses, and as identified in *Blazina*, the court must ask about the

defendant's other debts, including other LFOs, health care costs, or education loans. To satisfy *Blazina* and RCW 10.01.160(3)'s mandate that the State cannot collect costs from defendants who are unable to pay, the record must reflect that the trial court inquired into all five of these categories before deciding to impose discretionary costs. That did not happen here.

The State argues, and the Court of Appeals majority agreed, that despite any lack of inquiry by the trial court into Ramirez's ability to pay, statements by Ramirez during his allocution were adequate to support the imposition of discretionary LFOs. Resp't's Br. at 4. In opposing the State's request for an exceptional sentence, Ramirez told the court he was "doing everything right" prior to his arrest—he was working a minimum wage job at Weyerhaeuser on a "temporary service team," his wife had helped him get his own apartment, he was paying his household bills, including a DirecTV subscription, and he had opened a bank account for the first time in his life and was hoping to get a driver's license. VRP at 359-363. Ramirez did not offer this information in the context of assessing his current and future ability to pay LFOs, but rather in an effort to "counter the State's negative portrayal of him and direct the court's attention to his accomplishments in order to persuade the court he was deserving of a lesser sentence." Suppl. Br. of Pet'r at 19.

Notably, while the Court of Appeals majority viewed Ramirez's statements as supporting imposition of discretionary costs, there is no indication in the record that the trial court actually relied on any of Ramirez's statements. *See Ramirez*, slip op. at 13.[5] Nor would reliance on Ramirez's statements be reasonable, given that Ramirez was describing his circumstances and the positive strides he had made in the months *prior* to his arrest. As his statements at sentencing and his declaration of indigency make clear, all of that changed. Indeed, Ramirez lamented that after being on the right track, he "screwed up" and lost everything. VRP at 363.

RCW 10.01.160(3) requires the trial court to inquire into a person's present and future ability to pay LFOs. This inquiry must be made on the record, and courts should be cautious of any after-the-fact attempt to justify the imposition of LFOs based on information offered by a defendant for an entirely different purpose. Judges understand that defendants want to appear in their best light at sentencing. It

---

[5] The Court of Appeals inferred that the trial court's decision was based on Ramirez's statements:

> Here, the court considered that Ramirez had recently been released from custody, was working in a minimum wage job, and had been paying his household bills. Ramirez also told the court that he had opened a bank account for the first time in his life and "was just getting on track[.]" He added that although he was working a minimum wage job "it was fine because it took care of everything." Thus, we hold that the court conducted an adequate individualized inquiry and did not err in imposing the discretionary LFOs.

*Ramirez*, slip op. at 13 (citations omitted).

is precisely for this reason that the judge's obligation is to engage in an on-the-record individualized inquiry into the defendant's ability to pay discretionary LFOs.

We hold that the trial court failed to make an adequate individualized inquiry into Ramirez's current and future ability to pay prior to imposing discretionary LFOs. Normally, this *Blazina* error would entitle Ramirez to a full resentencing hearing on his ability to pay LFOs. The timing of Ramirez's appeal, however, makes this case somewhat unusual. After we granted review, the legislature passed House Bill 1783, which amends two LFO statutes at issue. LAWS OF 2018, ch. 269. House Bill 1783 amends the discretionary LFO statute, former RCW 10.01.160, to prohibit courts from imposing discretionary costs on a defendant who is indigent at the time of sentencing as defined in RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, § 6(3). House Bill 1783 also amends the criminal filing fee statute, former RCW 36.18.020(h), to prohibit courts from imposing the $200 filing fee on indigent defendants. LAWS OF 2018, ch. 269, § 17(2)(h).

Ramirez argues that House Bill 1783's amendments apply to his case on appeal because he qualified as indigent at the time of sentencing and his case was not yet final when House Bill 1783 was enacted. Suppl. Br. of Pet'r at 8-10. As for the remedy, Ramirez asks us to strike the discretionary LFOs and the $200 criminal filing fee from his judgment and sentence rather than remand his case for

resentencing. For the reasons discussed below, we agree that House Bill 1783 applies on appeal to invalidate Ramirez's discretionary LFOs (and the $200 criminal filing fee) and that resentencing is unnecessary in this case.

II. House Bill 1783 Applies Prospectively to Ramirez's Case Because the Statutory Amendments Pertain to Costs and His Case on Direct Review Is Not Yet Final

House Bill 1783's amendments modify Washington's system of LFOs, addressing some of the worst facets of the system that prevent offenders from rebuilding their lives after conviction. For example, House Bill 1783 eliminates interest accrual on the nonrestitution portions of LFOs, it establishes that the DNA database fee is no longer mandatory if the offender's DNA has been collected because of a prior conviction, and it provides that a court may not sanction an offender for failure to pay LFOs unless the failure to pay is willful. LAWS OF 2018, ch. 269, §§ 1, 18, 7. Relevant here, House Bill 1783 amends the discretionary LFO statute, former RCW 10.01.160, to prohibit courts from imposing discretionary costs on a defendant who is indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 6(3). It also prohibits imposing the $200 filing fee on indigent defendants. *Id.* § 17. Because House Bill 1783 was enacted *after* we granted Ramirez's petition for review, we must decide whether House Bill 1783's amendments apply to Ramirez's case on appeal. We hold that House Bill 1783 applies prospectively to Ramirez

because the statutory amendments pertain to costs imposed on criminal defendants following conviction, and Ramirez's case was pending on direct review and thus not final when the amendments were enacted.

At the time of Ramirez's sentencing in 2016, the discretionary cost statute provided that "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them." Former RCW 10.01.160(3). In making this determination, the statute instructed the trial court to "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Id.* The statutory language directs that the trial court must consider a defendant's current and future ability to pay before deciding to impose discretionary costs on the defendant.

House Bill 1783 amends former RCW 10.01.160(3) to expressly prohibit courts from imposing discretionary costs on defendants who are indigent at the time of sentencing: "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent as defined in RCW 10.101.010(3)(a) through (c)." LAWS OF 2018, ch. 269, § 6(3). Under RCW 10.101.010(3)(a) through (c), a person is "indigent" if the person receives certain types of public assistance, is involuntarily committed to a public mental health facility, or receives an annual income after taxes of 125 percent or less of the current federal poverty level. If the defendant is not

indigent, the amendment instructs the court to engage in the same individualized inquiry into the defendant's ability to pay as previously required under former RCW 10.01.160(3), i.e., to assess "the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Id.* In this case, there is no question that Ramirez satisfied the indigency requirements of RCW 10.101.010(3)(c) at the time of sentencing. Accordingly, if House Bill 1783 applies to Ramirez's case, the trial court impermissibly imposed discretionary LFOs on Ramirez.

As noted, House Bill 1783 also amends the criminal filing fee statute, former RCW 36.18.020(2)(h), to prohibit charging the $200 criminal filing fee to defendants who are indigent at the time of sentencing. LAWS OF 2018, ch. 269, § 17. Thus, if House Bill 1783's amendments apply to Ramirez's case on appeal, the trial court improperly imposed both the discretionary costs of $2,100 and the criminal filing fee.

This is not our first occasion to consider the prospective application of cost statutes to criminal cases on appeal. In *State v. Blank*, 131 Wn.2d 230, 249, 930 P.2d 1213 (1997), we held that a statute imposing appellate costs applied prospectively to the defendants' cases on appeal. In *Blank*, the defendants' appeals were pending when the legislature enacted a statute providing for recoupment of

appellate defense costs from a convicted defendant. *Id.* at 234. In determining whether the statute applied to the defendants' cases, we clarified that "'[a] statute operates prospectively when the precipitating event for [its] application . . . occurs after the effective date of the statute.'" *Id.* at 248 (alterations in original) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)). We concluded that the "precipitating event" for a statute "concerning attorney fees and costs of litigation" was the termination of the defendant's case and held that the statute therefore applied prospectively to cases that were pending on appeal when the costs statute was enacted. *Id.* at 249 (citing *Kilpatrick v. Dep't of Labor & Indus.*, 125 Wn.2d 222, 232, 883 P.2d 1370, 915 P.2d 519 (1994) (holding that the right to attorney fees is governed by the statute in force at the termination of the action)).

Similar to the statute at issue in *Blank*, House Bill 1783's amendments concern the court's ability to impose costs on a criminal defendant following conviction. House Bill 1783 amends former RCW 10.01.160(3) by expressly prohibiting the imposition of discretionary LFOs on defendants like Ramirez who are indigent at the time of sentencing; the amendment conclusively establishes that courts do not have discretion to impose such LFOs. And, like the defendants in *Blank*, Ramirez's case was on appeal as a matter of right and thus was not yet final

-21-

under RAP 12.7 when House Bill 1783 became effective. Because House Bill 1783's amendments pertain to costs imposed upon conviction and Ramirez's case was not yet final when the amendments were enacted, Ramirez is entitled to benefit from this statutory change.

Applying House Bill 1783 to the facts of this case, we hold that the trial court impermissibly imposed discretionary LFOs of $2,100, as well as the $200 criminal filing fee, on Ramirez. We reverse the Court of Appeals and remand for the trial court to amend the judgment and sentence to strike the improperly imposed LFOs.

CONCLUSION

In *Blazina*, we held that under former RCW 10.73.160(3), trial courts have an obligation to conduct an individualized inquiry into a defendant's current and future ability to pay discretionary LFOs before imposing them at sentencing. Today, we articulate specific inquiries trial courts should make in determining whether an individual has the current and future ability to pay discretionary costs. Trial courts must meaningfully inquire into the mandatory factors established by *Blazina*, such as a defendant's incarceration and other debts, or whether a defendant meets the GR 34 standard for indigency. Trial courts must also consider other "important factors" relating to a defendant's financial circumstances, including employment history, income, assets and other financial resources, monthly living expenses, and other

debts. Under this framework, trial courts must conduct an on-the-record inquiry into the mandatory *Blazina* factors and other "important factors" before imposing discretionary LFOs.

We reverse the Court of Appeals and hold that the trial court failed to conduct an adequate *Blazina* inquiry into Ramirez's current and future ability to pay. Although this *Blazina* error would normally entitle Ramirez to a resentencing hearing on his ability to pay, resentencing is unnecessary in this case. House Bill 1783, which prohibits the imposition of discretionary LFOs on an indigent defendant, applies on appeal to invalidate Ramirez's discretionary LFOs (and the $200 criminal filing fee). We remand for the trial court to strike the $2,100 discretionary LFOs and the $200 filing fee from Ramirez's judgment and sentence.

Stephens, J.

WE CONCUR:

Fairhurst, C.J.

Johnson, J.

Madsen, J.

Owens, J.

Wiggins, J.

González, J.

Gordon McCloud, J.

Yu, J.