IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53227-1-II |
| Respondent, | |
| v. | |
| BERT LEE TURNER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Bert Lee Turner appeals his conviction and sentence for third degree

assault and his sentence for resisting arrest. He argues that the trial court erred when it refused to

instruct the jury on the inferior degree offense of fourth degree assault. He also argues, and the

State concedes, that the trial court erred when it imposed interest accrual on his nonrestitution

legal financial obligations. Because Turner cannot show that the evidence supports an inference

that he committed only the inferior offense, we hold that the trial court did not err when it denied

the inferior offense jury instruction. However, the interest accrual is barred by statute.

Consequently, we affirm Turner's conviction, but remand to strike the interest accrual provision.

FACTS

In June 2018, Amber Calhoun called 911 and reported that her boyfriend, Bert Turner,

had choked and hit her at her apartment. Three uniformed Pierce County Sheriff's Department

officers responded to the call, including Joshua Mills and Michael Medina.

Dispatch provided the officers with Turner's name and description. When the officers

arrived on scene, they saw Turner walking outside Calhoun's apartment building. The officers

repeatedly called for Turner to stop, but he continued walking away from the officers. The officers approached Turner and told him he was under arrest for fourth degree assault—domestic violence. The officers placed Turner in handcuffs, but he was uncooperative.

Turner struggled against being placed in the back of a police vehicle by bracing his legs on the door frame and pushing away from the vehicle. Turner kicked the officers as they tried to put him into the vehicle. The officers struck Turner with their hands during their attempt to get him into the vehicle. The officers then restrained Turner's legs using a hobble. At some point, one of Calhoun's neighbors began videotaping the incident.

The State charged Turner with five crimes: count 1—third degree assault of officer Mills; count 2—third degree dssault of officer Medina; count 3—fourth degree assault of Amber Calhoun; count 4—interfering with the reporting of domestic violence; and count 5—resisting arrest.

The case proceeded to jury trial. At the trial, witnesses testified as described above. The neighbor who videotaped part of the incident testified that he did not see Turner strike or kick any of the officers. However, another witness testified that she saw Turner kick the officers. The neighbor's video recording was played for the jury. Turner also testified and said that he did not kick or hit any of the officers. Turner said that two of the officers kneeled on him after he was handcuffed. Turner testified that one of the officers choked him while trying to pull him into the car, and that during his arrest the officers twisted his arm and stepped on his foot.

Before closing arguments, Turner requested that the jury be instructed on the inferior degree offense of fourth degree assault for counts 1 and 2. Turner argued that evidence supported the inference that the police officers went beyond their official duties during the arrest,

and therefore the jury should be instructed on the inferior offenses. The trial court denied the request to instruct on the inferior degree offenses. The court stated:

> [T]he defense in the case was general denial, that he didn't kick anyone, which allows the Defense to argue that there was never an assault upon the two law enforcement officers, as the defendant testified he never kicked anybody and the independent civilian witnesses testified they never saw the defendant kick anyone. So I don't think you get the lesser included on those two.

Verbatim Report of Proceedings (VRP) (Jan. 30, 2019) at 8.[1]

The jury found Turner guilty of count 1, third degree assault of officer Mills, and count 5, resisting arrest, but acquitted Turner on the other charges. Turner was sentenced to 30 days on both counts to be served concurrently.

The trial court imposed a $500.00 mandatory crime victim assessment and a $100.00 DNA (deoxyribonucleic acid) collection fee. Turner requested that he be found indigent and that the trial court not impose any nonmandatory costs or fines. The trial court found Turner indigent and stated it would impose "only the mandatory with the $500 crime victim penalty assessment and $100 DNA fee." VRP (Feb. 15, 2019) at 11. However, the judgment and sentence form states that "[t]he financial obligations imposed in this judgment shall bear interest from the date of the judgment until payment in full, at the rate applicable to civil judgments. RCW 10.82.090." Clerk's Papers at 165.

Turner appeals his judgment and sentence.

---

[1] Although the judge stated that the "witnesses" testified they never saw Turner kick anyone, the record shows that one witness did and the other did not. This fact does not change our analysis.

## ANALYSIS

### I. INFERIOR DEGREE OFFENSE INSTRUCTION

Turner argues that the trial court erred when it declined to instruct the jury on the inferior degree offense of fourth degree assault. Specifically, he argues that the officers who arrested him were not performing their official duties because they used excessive force when arresting him. We hold that the trial court did not err when it refused to instruct the jury on the inferior degree offense.

We review a trial court's refusal to give a jury instruction based on evidence at trial, for abuse of discretion. *State v. Henderson*, 182 Wn.2d 734, 743, 344 P.3d 1207 (2015). When determining whether evidence was sufficient to support the giving of a jury instruction, we view the evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000). A requested jury instruction on an inferior degree offense should be given only where "'the evidence would permit a jury to rationally find a defendant guilty of the lesser offense and acquit him of the greater.'" *Fernandez-Medina*, 141 Wn.2d at 456 (quoting *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997)).

> A person is guilty of assault in the third degree if he or she, under circumstances not amounting to assault in the first or second degree . . . [a]ssaults a law enforcement officer or other employee of a law enforcement agency who was *performing his or her official duties at the time of the assault*.

RCW 9A.36.031(1)(g) (emphasis added). "A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another." RCW 9A.36.041(1).

> An inferior degree instruction is proper when:
>
> "(1) [T]he statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense."

*Fernandez-Medina*, 141 Wn.2d at 453 (internal quotation marks omitted) (quoting *State v. Peterson*, 133 Wn.2d 885, 891, 948 P.2d 381 (1997).

Only the third prong of *Fernandez-Medina* is at issue here. Turner argues that this prong is satisfied because the officers used excessive force, thus taking them outside the scope of their "official duties" for the purposes of RCW 9A.36.031(1)(g). Br. of Appellant at 13.

Turner relies on *State v. Mierz*, where our Supreme Court defined "official duties" as "all aspects of a law enforcement officer's good faith performance of job-related duties, excluding conduct occurring when the officer is on a frolic of his or her own." 127 Wn.2d 460, 479, 901 P.2d 286 (1995). He argues that a jury could have concluded that the officers were not acting in good faith and were on a frolic of their own when they used excessive force against him.

In *Mierz*, the court addressed a similar argument. 127 Wn.2d at 478. There, Mierz argued that a law enforcement officer was not performing official duties for purposes of the assault statute because the officer made an illegal arrest. 127 Wn.2d at 479. The court rejected this argument, holding that RCW 9A.36.031(1)(g) applies even when law enforcement officers in the course of their duties are making an illegal arrest. 127 Wn.2d at 479. The *Mierz* court adopted a "liberal view of 'official duties'" and rejected an "overly restrictive definition." 127 Wn.2d at 473, 479.

Turner's argument that a jury could find that the deputies were inflicting unnecessary and therefore excessive force on a frolic of his or her own fails. The evidence here supports only one conclusion: The officers who arrested Turner were not on a frolic. All of the officers who responded were on duty. Each officer was dispatched to the scene after a 911 call. The officers were attempting to take Turner into custody, but he resisted their efforts. Even assuming, for the sake of argument, that the officers used more force than necessary during the arrest, the evidence does not support Turner's argument that they were not performing their official duties according to *Mierz* and under RCW 9A.36.031(1)(g). If illegal arrest is not enough to show frolic, then neither is the amount of force exerted here.

The record does not support an inference that Turner committed the inferior offense of fourth degree assault because the record shows the arresting officers were not acting outside the scope of their official duties. Accordingly, we hold that the trial court did not err when it denied the jury instruction on fourth degree assault.

## II. INTEREST ACCRUAL ON LEGAL FINANCIAL OBLIGATION

Turner argues, and the State concedes, that the interest accrual on the mandatory legal financial obligations is improper under RCW 10.82.090(1) and *State v. Ramirez*, 191 Wn.2d 732, 746-47, 426 P.3d 714 (2018). We agree.

In 2018, the legislature amended RCW 10.82.090(1) which now requires trial courts to waive all interest on the nonrestitution portions of the legal financial obligations. LAWS OF 2018, ch. 269, § 1.

Here, the trial court found Turner indigent. The trial court imposed a $500.00 mandatory crime victim assessment and a $100.00 DNA collection fee. And despite Turner's request that

No. 53227-1-II

the court not impose any nonmandatory costs, the trial court imposed interest accrual on those fees. Because imposition of interest accrual on nonrestitution legal financial obligations is prohibited by RCW 10.82.090(1), we remand to the trial court to strike the interest accrual provision.

We hold that the trial court did not err when it denied Turner's request for a jury instruction on fourth degree assault. We also hold that the trial court erred when it imposed interest accrual on Turner's legal financial obligations. Accordingly, we affirm the conviction and remand to strike the interest accrual provision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

_____
Glasgow, J.

_____
Cruser, J.