# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57314-8-II |
| Respondent, | |
| v. | |
| ALICIA JEAN GULLICKSON, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, A.C.J. — Alicia Gullickson was convicted of violating a protection order and committing criminal trespass in the second degree. The order in question prohibited Gullickson from coming within 1,000 feet of the residence of Bonnie Wilson. At trial, Wilson testified that she saw Gullickson standing 50 to 70 feet away from her, on Wilson's property. The State also presented evidence from Deputy Potis, the investigating officer, that he later returned to Wilson's property and measured the distance between the home and where Gullickson was when Wilson saw her. The prosecution did not disclose this evidence to the defense prior to trial. Defense counsel did not object during the testimony but later moved to strike the evidence regarding Potis' measurements from the record, asserting that the prosecution's failure to disclose this evidence was a discovery violation. The trial court agreed and struck the testimony, and also instructed the jury to disregard it. Despite receiving the entirety of the relief she sought at trial, Gullickson now argues that she is entitled to reversal.

Additionally, Gullickson argues that we should remand to strike the crime victim penalty assessment (VPA) fee of $500 because the trial court found her to be indigent at the time of sentencing. She argues that the VPA is unconstitutional as it was applied to her. The State disagrees that the VPA is unconstitutional but concedes that the issue should be remanded pursuant to RCW 7.68.035(5). Because the discovery violation did not deny Gullickson a fair trial, and because the trial court ordered the exact remedy that defense argued for, we affirm Gullickson's conviction. However, in accordance with the VPA statutory amendments, we remand to the trial court to consider how RCW 7.68.035(5) applies in this case.

## FACTS

### I. BACKGROUND & TRIAL

In February 2022, Alicia Gullickson was charged with violating a stalking protection order and committing criminal trespass in the second degree. The protection order prohibited Gullickson from coming within 1,000 feet of Bonnie Wilson's residence. The order went into effect on February 3, 2021, and lasted for one year.

On February 7, four days after the protection order went into effect, Wilson saw Gullickson on Wilson's property. That day, Wilson was walking in the woods on her property directly across the street from her house. Wilson testified at trial that she bent to the ground to put something down, and when she stood up again, she saw Gullickson standing approximately 50 to 70 feet away from her. Gullickson told Wilson that she was there because she wanted to give Wilson a metal dollhouse. Wilson immediately retreated into her home and called her neighbor for help. Wilson's neighbor went over to Wilson's house and then called the police to report that Gullickson violated the protection order.

The case proceeded to trial. In support of the position that Gullickson violated the protection order by coming within 1,000 feet of Wilson's residence, the State presented testimony from Wilson and from two Thurston County Sheriff's Deputies: Deputy Leischner, who was familiar with the area and property because it was within his patrol zone, and Deputy Potis, who responded to the 911 call from Wilson's neighbor. The State also presented photo exhibits portraying the relevant sections of Wilson's property, as well as a map of the property and surrounding area.

In addition to Wilson's testimony that she saw Gullickson standing approximately 50 to 70 feet from her while Wilson was walking on her property on February 7, Wilson testified that at the time she saw Gullickson, Wilson was standing approximately 80 to 100 feet from her house. Using an aerial map of her property and the surrounding area, Wilson pointed to where she had been standing when she saw Gullickson. Her home is located on the east side of Langworthy Road and Wilson had been standing on the west side of the road, directly across from her house, when she saw Gullickson. She testified that there is a gate on the west side of Langworthy Road and she had been standing right next to the gate when she first spotted Gullickson. She estimated the width of the road to be approximately 30 feet. Wilson also described a green gate, different than the gate where she was standing. She testified that that green gate is approximately 200 feet from her home and there is a footpath from the green gate that runs along the west side of the road. Wilson saw Gullickson coming up the footpath towards her. When Deputy Potis arrived, Wilson showed him the green gate and the footpath. She also showed him the metal dollhouse, which Gullickson had dropped where she was standing when Wilson saw her. She testified that all of the locations she discussed in her testimony were within 1,000 feet of her house.

Deputy Leischner testified at trial after Wilson. He is familiar with Langworthy Road because it is a part of his patrol area. He estimated the green gate on Wilson's property to be approximately 75 yards (225 feet) from Wilson's home. He also estimated that the field and fence across the street from Wilson's house (where Wilson had been standing when she saw Gullickson) was approximately 50 feet from the house.

Deputy Potis testified that he responded to the call from Wilson's neighbor reporting that Gullickson had violated the protection order. When Potis arrived at Wilson's home, Wilson physically showed him where she had been standing and where Gullickson was standing when Wilson spotted her. Potis testified that Wilson also showed him the metal dollhouse that Gullickson had left where she was standing. Potis estimated that the distance from where the dollhouse lay to Wilson's house was approximately 100 to 150 feet. After speaking with Wilson, Potis spoke with Gullickson. According to Potis, Gullickson told him that she had gone to the green gate on Wilson's property that day. She also told him that she was aware of the protection order but was unsure why it was in place. Potis confirmed that the fence, the field, and the gate described in his testimony are all within 1,000 feet of Wilson's residence. He based this testimony on his initial estimates which he later confirmed with measurements.

A. Potis' Undisclosed Testimony

In addition to the proper testimony Potis provided above, he also offered testimony regarding the measurements he took on a separate visit to Wilson's property. Potis testified that after visiting Wilson's property in response to the 911 call, he later returned to perform a "followup investigation in preparation for [his] testimony." Verbatim Rep. of Proc. at 82. Potis used a rolling measuring device to measure the distance between where the sheet metal dollhouse was found and

4

where Wilson said she was standing when she saw Gullickson. The distance measured somewhere between 85 and 100 feet. He also measured the distance between Wilson's home and gate, and concluded that the distance was about 275 feet. Potis did not write a report detailing the measurements. The prosecution did not inform defense counsel that Potis performed the measurements and planned to offer testimony regarding those measurements.

B. Court's Response to Discovery Violation

Gullickson did not object during Potis' testimony. However, outside of the presence of the jury, she moved to strike Potis' testimony regarding the measurements from the record. Defense counsel reported that he was not aware that Deputy Potis returned to Wilson's property to take measurements, and requested that the court strike the evidence from the record. Regarding the testimony, counsel said, "I think it's difficult for the jury to forget that, but I think we can make a[n] appropriate instruction . . . [that] they should not consider that evidence in their deliberations." *Id.* at 93.

The court granted the motion to strike. When the jury returned, the court gave the following instruction to the jury: "disregard the testimony from Deputy Potis as it relates to any measurements that he did using that wheel device. All of that testimony has been stricken from the record. You may not consider that testimony in your deliberations." *Id.* at 105-06. At the close of arguments, while reading instructions to the jury, the court again explained, "If I have ruled that any evidence is inadmissible or if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching the verdict. Do not speculate whether the evidence would have favored one party or the other." *Id.* at 121.

5

## II. VERDICT & INDIGENCY FINDING

On June 23, 2022, a jury found Gullickson guilty of one count of violating a protection order and one count of criminal trespass in the second degree.

At sentencing, Gullickson was ordered to pay a $500 victim assessment fine. Following Gullickson's sentencing in August 2022, the superior court issued an order of indigency, finding that Gullickson "lacks sufficient funds to prosecute an appeal and applicable law grants the defendant a right to review and public expense." Clerk's Papers at 138.

## ANALYSIS

### I. DISCOVERY VIOLATION

Gullickson argues that the State's discovery violation denied her a fair trial. She contends that the remedy *she requested* below—to strike the evidence and instruct the jury to disregard it—was insufficient. She argues that it was unreasonable to ask and trust the jury to disregard that testimony after hearing it because all other testimony regarding the distances in question was "imprecise" and, as such, Potis' testimony about measuring the distances "filled in blanks left by the other witnesses." Br. of Appellant at 9. Gullickson contends that the trial court should have sua sponte dismissed the charges or declared a mistrial.

Gullickson fails to offer any explanation in support of the alternative remedies she seeks, and simply asks us to reverse her conviction and either order a new trial or dismiss her case. Beyond her citation to a single case (*State v. Cannon*, 130 Wn.2d 313, 328, 922 P.2d 1293 (1996)) containing boilerplate that tells us that under CrR 8.3(b), the available remedies for a discovery violation can include suppression of the evidence or dismissal, Gullickson makes no argument about which remedy she seeks and why we should agree with her proposal. At the outset, we do

not consider her request for dismissal where she makes no argument in support of that remedy. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."). Ordering the dismissal of a criminal case after conviction and judgment in the absence of any argument supporting such a remedy would be extraordinary. Furthermore, Gullickson has not shown that she was denied a fair trial and she is therefore not entitled to reversal.

A. Legal Principles

In a criminal trial, the prosecution must disclose to the defense the results of physical examinations by experts. CrR 4.7(a)(1)(iv). When that rule is violated during a trial, the court may order the following remedies: "permit the discovery of material and information not previously disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under the circumstances." CrR 4.7(h)(7).

B. Application

The parties and the trial court all agreed that the prosecution had a duty to disclose the measurements that Deputy Potis took on Wilson's property. Gullickson moved to strike the testimony related to these measurements and the trial court granted her request. The trial court further ensured no prejudice would ensue by issuing a limiting instruction to the jury instructing them to disregard this evidence. The jury is presumed to follow the trial court's instruction. *State v. Rivers*, 1 Wn.3d 834, 869, 533 P.3d 410 (2023). Gullickson's argument, made for the first time on appeal, that the trial court erred by not sua sponte declaring a mistrial is wholly without merit. As an initial matter, Gullickson neither addresses or even cites RAP 2.5(a)(3), or in any way argues to this court that this claim of error should be reviewed for the first time on appeal.

7

Second, even assuming this claim is reviewable, Gullickson fails to demonstrate that she suffered prejudice when the trial court granted her requested remedy and struck Deputy Potis' measurement testimony. Contrary to Gullickson's argument, the other testimony establishing that she was well within the 1,000-foot distance set forth in the protection order was not "imprecise at best." Br. of Appellant at 9. Wilson testified that she was standing approximately 80-100 feet from her house when she saw Gullickson, and Gullickson was standing approximately 50-70 feet from her. Taken together, Wilson estimated that Gullickson stood between 130 and 170 feet from Wilson's home. Deputy Leischner estimated that the green gate that Gullickson was standing near was about 225 feet from Wilson's home. Again, Gullickson only needed to be within 1,000 feet of the residence to be in violation of the protection order. Wilson's testimony alone, without Deputy Potis' measurements, was more than sufficient to establish that Gullickson violated the protection order, so any error that arose from Deputy Potis' testimony was harmless.

Because Gullickson fails to show that the trial court erred in not sua sponte ordering a mistrial, and she received the exact remedy she sought, she was not denied a fair trial. We affirm her conviction.

## II. CRIME VICTIM PENALTY ASSESSMENT

A. Legal Principles

Effective January 1, 2023, courts may not impose the VPA on defendants who are indigent as defined by RCW 10.101.010(3)(a)-(c). RCW 10.01.160(3).[1] Although this change in the law

---

[1] While Gullickson argues that the VPA was unconstitutional as applied to her in her opening brief, she abandons the constitutional argument in her reply brief in light of the legislature's enactment of RCW 7.68.035(5)(b) and RCW 10.01.160(3), which provide her with the relief she seeks.

took effect after Gullickson's sentencing, it applies to Gullickson because this case is on direct appeal. *See State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

B. Application

The State concedes that recent statutory amendments require us to remand for consideration of whether Gullickson's VPA should be waived based on the definition of indigency under RCW 10.101.010(3)(a)-(c). Gullickson replies that we should remand to strike the fee, rather than for consideration of the issue, because she was found indigent for purposes of filing this appeal. Further, the record contains insufficient evidence for us to determine whether the court would have found her indigent based on the operative definition of indigency if it considered the question at that time. We therefore must remand for the court to consider whether to waive Gullickson's VPA pursuant to RCW 7.68.035(5)(b), because the operative definition of indigency does not allow us to rely on the indigency finding that was made for the purposes of this appeal.

CONCLUSION

We affirm Gullickson's conviction but remand to the trial court to determine whether to waive Gullickson's VPA.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, A.C.J.

We concur:

MAXA, J.

PRICE, J.