IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39287-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MICHAEL BRAD FUHRMAN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Michael Brad Fuhrman appeals after a jury convicted him of unlawful possession of a firearm (UPFA) and making a false or misleading statement to a public servant. He argues the trial court erred by admitting hearsay and a new trial is required on the UPFA charge because the error is not harmless. He also argues the trial court erred by imposing a victim penalty assessment (VPA). We conclude that if the evidentiary error was preserved, it was harmless. We affirm Fuhrman's UPFA conviction, but remand for the trial court to strike the VPA.

No. 39287-2-III
*State v. Fuhrman*

FACTS

*Background*

James Swayne stored his travel trailer and some other belongings on property he owned but where he did not live. In the travel trailer's kitchen, he stored the trailer's registration certificate and a .38 revolver.

One afternoon, Swayne's neighbor saw a pickup truck parked in Swayne's driveway behind the trailer and heard people moving around the property. Because she knew there had been recent criminal activity at the property, she called the sheriff's office to report the activity. Deputies Matthew Kersten and Brian Heimbigner responded to the report. Upon their arrival, Deputy Kersten saw four people walking around the property, entering and exiting the trailer and buildings, and loading items into the back of a pickup truck.

The deputies handcuffed and detained the people—Michael Brad Fuhrman, Aleesha Level, Steven Manus, and Chelsea Dennis. Fuhrman explained to Deputy Kersten that he was on the property to take possession of a travel trailer that he had purchased from Swayne. Fuhrman told Deputy Kersten that he had the bill of sale in either the front seat or the glove box of his pickup. After Deputy Kersten did not find the bill of sale in either location, he arrested Fuhrman.

2

The officers frisked Fuhrman and noticed and removed an empty gun holster clipped to his belt. Fuhrman said he had borrowed the pair of pants from Dennis. He said he did not know the holster was attached to his pants until the deputies removed it. Fuhrman was prohibited from possessing firearms due to a previous burglary conviction. The deputies then spoke to Level, Manus, and Dennis. All three told the deputies that Fuhrman had a firearm inside his pickup.

The deputies impounded Fuhrman's pickup and obtained a search warrant to look for firearms and ammunition. The deputies identified a .38 caliber bullet underneath the front passenger seat, along with .300 and .22 caliber ammunition in a toolbox in the back of the truck. The toolbox also contained a loaded .38 caliber revolver, along with the vehicle registration certificate and an incomplete bill of sale for Swayne's trailer. Swayne confirmed that the certificate and the revolver were his.

*Trial*

The State charged Fuhrman with (1) residential burglary, (2) second degree vehicle prowling, (3) first degree unlawful possession of a firearm, (4) possessing a stolen firearm, (5) third degree theft, and (6) making false or misleading statements to a public servant. The unlawful possession charge required the State to prove that Fuhrman had *knowingly* possessed the firearm.

3

At trial, the State asked Deputy Heimbigner why he sought a search warrant for weapons and ammunition in Fuhrman's pickup. He answered, "During the—the period when Deputy Kersten was speaking with the individuals, there was a lot of talk and claims made to us." Report of Proceedings (RP) at 321. Defense counsel then raised a hearsay objection. The State responded that it was not offering the statement for the truth of what was said to the deputy, but why he had applied for the search warrant. The court overruled defense counsel's objection. Deputy Heimbigner's direct examination proceeded as follows:

> A . . . At that time, they were making allegations that Mr. Fuhrman had a firearm inside the vehicle.
> Q Okay. And when you say they, who are you referring to?
> A Level, Manus, and Dennis. The other three individuals.
> Q And were you able to obtain a search warrant?
> A Yes, ma'am.
> . . . .
> Q Okay. And what evidence did you collect?
> A There is a—a record showing the ammunition, the .38 revolver that was found, a bill of sale that was . . . in the toolbox.

RP at 321-23.

Soon after, Fuhrman informed the court he wanted to discuss his objection again, and the court excused the jury from the courtroom. Defense counsel requested a mistrial on three grounds. Relevant to this appeal, defense counsel argued that the statement was hearsay and that the deputy's reason for seeking a warrant is not an exception to the

hearsay rule.  The State again responded that its intent was to show why the deputy

sought the warrant.  The court stated that a limiting instruction would be appropriate:

> THE COURT:  . . .  [T]o assure that the jury doesn't accept these comments, statements, whatever they are, as any type of substantive evidence, I think we need a limiting instruction that says you shall not consider them as evidence, only for developing probable cause or something like that.

RP at 326.  The parties agreed that a statement made by any of the three to the deputy

could be used as substantive evidence *if* the person admitted making the statement to him.

So, whether defense counsel could seek a limiting instruction was dependent upon future

testimony.

The State later called both Level and Manus as witnesses.[1]  The State asked each

of them whether they told the deputy that Fuhrman had a gun in his pickup.  Each denied

making such a statement.  So, Fuhrman was entitled to a limiting instruction, if he

requested one.  But he did not.

Fuhrman testified at trial.  He said he had recently purchased the trailer from

Swayne and was on the property to take possession of it.  He said he had contacted his

friend Manus to help move the trailer using Manus's larger pickup.[2]  Fuhrman said he

had paid $1,000 for the trailer and received the bill of sale approximately two to three

---

[1] Dennis did not testify at trial.

[2]  As previously noted, Fuhrman also drove a pickup.

weeks before trying to retrieve it. Fuhrman testified he thought the owner of the trailer was perhaps a boyfriend to Chelsea Dennis and later, after seeing Jeff Dennis, her husband, he thought Jeff was the person who gave him the bill of sale.

Fuhrman testified his toolbox had been locked and that Chelsea Dennis must have taken his keys—which he had left on the seat of his pickup—and used them to unlock his toolbox and place the revolver inside. On cross-examination, Fuhrman acknowledged he had testified in a prior hearing that only he had access to his keys.

In the State's closing argument, it argued Fuhrman constructively possessed the .38 revolver because it was in his pickup's toolbox. It then argued Fuhrman *knowingly* possessed the revolver because he had been wearing a gun holster. The State also argued that the .38 round found inside Fuhrman's pickup, because it was the same type found inside the revolver, was additional evidence that Fuhrman had *knowingly* possessed the revolver.

The jury convicted Fuhrman of first degree UPFA and making a false or misleading statement to a public servant. It could not reach a verdict on the remaining charges. The trial court sentenced Fuhrman to 41 months of confinement and imposed a $500 VPA.

Fuhrman appealed to this court.

ANALYSIS

IF PRESERVED, THE EVIDENTIARY ERROR IS NOT REVERSIBLE

Fuhrman argues he is entitled to a new trial on his conviction for UPFA because the trial court erred by admitting hearsay, and there is a reasonable probability that, without the error, the jury would not have convicted him of UPFA.  We disagree.

During trial, the State asked the deputy why he sought a search warrant for weapons and ammunition in Fuhrman's pickup.  The deputy's response was, "[W]hen Deputy Kersten was speaking with the individuals, there was a lot of talk and claims made to us."  RP at 321.  It was at this point when Fuhrman made his hearsay objection.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c).  Because the deputy had not testified what someone else had said, Fuhrman's hearsay objection was premature.  We conclude the trial court did not err by overruling the objection.

After the court ruled, the deputy then began testifying what the others had told him.  This would have been the appropriate time to raise a hearsay objection.  The failure to timely object prevented the trial court from excluding the hearsay evidence.

But even were we to treat Fuhrman's premature objection as timely, there is no reversible error.  Evidentiary error is not reversible if it is harmless.  *State v. Rocha*, 21

7

Wn. App. 2d 26, 34, 504 P.3d 233 (2022). Evidentiary error is harmless if there is a reasonable probability that, without the error, the outcome of the trial would have been materially affected. For evidentiary error to be reversible, there must be a reasonable probability that it materially affected the outcome of the trial. *State v. Gresham*, 173 Wn.2d 405, 433, 269 P.3d 207 (2012).

Here, the State did not rely on hearsay to prove that Fuhrman knowingly possessed the revolver. Had the State argued that Fuhrman knew the revolver was in his pickup because everyone else knew it was there, we might conclude differently. But instead, the State argued that Fuhrman knowingly possessed the revolver because he was wearing a gun holster and because the round of ammunition found inside his pickup matched the rounds inside the revolver. Even more obvious, no reasonable juror could believe that any of the three people accompanying Fuhrman would steal Swayne's revolver simply to put it inside Fuhrman's locked toolbox. This is especially true given that Fuhrman, on cross-examination, admitted he testified at a prior hearing that only he had access to his keys.

We conclude, if Fuhrman's hearsay objection was timely, the improper evidence did not materially affect the jury's UPFA verdict.

No. 39287-2-III
*State v. Fuhrman*

VPA

Fuhrman argues, and the State concedes, the trial court erred by imposing the VPA. We accept the State's concession.

In 2023, the legislature amended RCW 7.68.035 to prohibit trial courts from imposing a VPA on defendants who were indigent at the time of sentencing. RCW 7.68.035(4). Because this case was on direct review when the law was amended, Fuhrman is entitled to have the VPA struck. We remand for the trial court to strike the VPA. *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018).

Conviction affirmed but remanded to strike VPA.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Fearing, J.

Cooney, J.

9