# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE STATE OF WASHINGTON,

Respondent,

v.

LAVELLE KENNETH JOHNSON,

Appellant.

No. 84833-0-I

DIVISION ONE

UNPUBLISHED OPINION

BIRK, J. — A jury convicted Lavelle Johnson of assault in the second degree and unlawful possession of a firearm in the first degree. Johnson challenges the trial court's admission of evidence about an incident that tied Johnson to the firearm involved in the charged crimes. Johnson also challenges the inclusion of juvenile offenses in his offender score and the imposition of a victim penalty assessment (VPA). We remand to strike the VPA, but otherwise affirm Johnson's convictions and sentence.

I

A jury found Johnson guilty of charges of one count of assault in the second degree and one count of unlawful possession of a firearm in the first degree. Johnson's convictions were based on the State's allegations that, on October 12, 2019, Johnson pointed a gun at two individuals and fired multiple shots at a vehicle. Trial was held in August 2022, and according to testimony the State presented, Monique Worsham and her boyfriend, Ha Thach, were parked in Thach's Jeep

Cherokee in southeast Seattle on the evening in question. Thach's Jeep was parallel parked behind Worsham's car (a Chevrolet Lumina), which was, in turn, parked behind a silver BMW X5 sport utility vehicle (SUV). There were some tools and a gas can on the curb next to the SUV.

A man pulled up in a dark BMW 530E (BMW), got out of the vehicle, and approached the SUV. He appeared to be the owner of the SUV and to believe that Worsham and Thach had tampered with and/or siphoned gasoline from the SUV. The man yelled at Worsham and Thach, returned to the vehicle he arrived in, retrieved a handgun, and pointed it at Thach and then at Worsham.[1] The man then fired several shots at Worsham's Chevrolet and sped away. The bullets shattered the Chevrolet's rear window.

Police officers responded. Worsham provided the license plate number of the BMW. Police collected shell casings on the street and determined that the SUV was registered to Johnson.

A few days later, different police officers contacted Johnson in the BMW. Upon searching the vehicle, police officers found items connecting the BMW to Johnson. Within a week of the incident, Worsham identified Johnson in a photo montage as the assailant.

---

[1] The original information alleged that Johnson assaulted both Worsham and Thach. After the State was unable to locate Thach and determined that it would not call him as a witness, the State amended the information so that the assault count related only to Worsham.

2

II

Johnson does not challenge the above evidence on appeal. He asserts the trial court erred by allowing additional evidence concerning events occurring approximately three months later, in January 2020, as a result of which the State brought a separate charge against Johnson for unlawful possession of a firearm. According to the State's certification for determination of probable cause in that case, police responded on January 2, 2020, to a shooting on Bell Street in downtown Seattle. They found Johnson with a gunshot wound to his leg. They also found several shell casings. A witness told them that another person who was present, Rogelle Harris, had placed something in a garbage can after Johnson was injured. Police retrieved a handgun from a dumpster in the same location. Surveillance video from a nearby business showed "there was a shootout with at least two people shooting at each other," from which two other persons fled after the shooting. Examination of the shell casings recovered in the January 2020 incident showed that they matched those recovered in the October 2019 incident, and all had been fired from the gun retrieved at the January 2020 scene. The State moved to join the charges stemming from the October 2019 and January 2020 incidents. The trial court denied joinder. In December 2021, a jury failed to reach a verdict on the unlawful possession charge against Johnson arising out of the January 2020 incident.

Before trial in this case, Johnson presented a motion in limine to exclude reference to the events in January 2020 under ER 404(b) and ER 403. Johnson argued the jury would draw the implication that Johnson was "an active participant

3

in both cases," even though he had never been accused of engaging in gunfire in the January 2020 events. The State sought permission to admit evidence that Johnson was shot and injured in January 2020, police recovered a firearm from the area where Johnson was found, and testing of the firearm revealed that it was a match for the casings found near Worsham's Chevrolet. The State disclaimed intent to offer evidence of a "gunfight," and sought only to show the gun was located nearby Johnson. The State argued that, to the extent the evidence fell within the ambit of ER 404(b), it was admissible to establish Johnson's identity. The State also noted that, because the firearm recovered was successfully test fired, the evidence was also relevant to establish the "operability" of the firearm.[2]

Johnson argued in response that the State's proposed evidence would open the door to additional evidence to provide "context" and rebut the implication that Johnson had possessed and discarded the firearm. The defense indicated that it would seek to present video footage, evidence about the location of casings at the scene, and evidence that another individual placed the firearm in a garbage bin in the alley. Johnson again argued the evidence the State proposed to present would unfairly allow the jury to speculate that he was an "active participant" in a "gunfight."

The trial court granted the State's motion, stating, "I'm going to grant the State's motion to allow the State to introduce evidence that a gun was found in proximity, allegedly, to Mr. Johnson in January of 2020." The court reserved ruling

---

[2] In order to prove that Johnson unlawfully possessed a firearm, the State had to prove that the object he possessed met the definition of a firearm; meaning that it was a "weapon or device from which a projectile may be fired by an explosive such as gunpowder."

on what additional evidence about the January 2020 incident the defense would be allowed to present.

At trial, the State presented evidence that in January 2020, police officers responded to an incident on Bell Street in downtown Seattle. Johnson had sustained a gunshot wound and police officers found a firearm in an alley, approximately 30 to 50 feet from where Johnson was found. A police officer tested the firearm, determined it was functional, and recovered the ejected casings. A forensic scientist specializing in firearms and toolmarks determined that the recovered firearm's ejected casings matched those collected in October 2019 near Worsham's Chevrolet. On cross-examination of the State's witnesses, Johnson's counsel elicited that there had been shell casings at the January 2020 scene, video showed two groups of people exchange shots, police never identified some of the gunfighters, Harris was present at the scene, and no fingerprints were recovered from the gun. Johnson's counsel asked a police officer, "How did [the firearm] end up in the trash can," to which the officer answered, "Harris took it from Lavelle Johnson and put it" there.

Johnson contends the trial court abused its discretion when it admitted evidence that he "possessed a firearm and was involved in an unrelated shooting" because the evidence "carried great potential for unfair prejudice" and the State did not "need" it to prove identity or that the firearm was operable. We disagree.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show action in conformity therewith." ER 404(b). However, such evidence may be admissible for other purposes "such as proof of

5

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).  For evidence of "prior bad acts" to be admissible, the trial judge must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.  State v. Gunderson, 181 Wn.2d 916, 923, 337 P.3d 1090 (2014).  "The trial court must also give a limiting instruction to the jury if the evidence is admitted." Id.  Other act evidence must be "relevant and necessary to prove an essential ingredient of the crime charged."  State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).  This court reviews a trial court's decision to admit ER 404(b) evidence for abuse of discretion.  State v. Denham, 197 Wn.2d 759, 771, 489 P.3d 1138 (2021).  A court abuses its discretion if its decision is based on untenable grounds or untenable reasons.  State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

The trial court acted within its discretion in ruling that any danger of unfair prejudice did not outweigh the probative value of the evidence.  The main concern with the admission of ER 404(b) evidence is the risk of suggesting a defendant is guilty because they are a criminal-type person who would likely commit the charged crime.  State v. Foxhoven, 161 Wn.2d 168, 175, 163 P.3d 786 (2007). The trial court's ruling did not encompass evidence of Johnson's involvement in a shooting, beyond his status as a shooting victim, and the State never suggested Johnson fired a gun in the January 2020 incident.  Johnson made a strategic

choice to elicit evidence on cross-examination, over the State's objection, which suggested an exchange of gunfire and that both he and Harris possessed the gun. On appeal, Johnson suggests that the State could have relied on expert testimony about the spent shell casings without presenting evidence about the circumstances in which the firearm was recovered. But the evidence that Johnson sustained a gunshot wound and the police nearby recovered a firearm that they were able to identify as the one used to assault Worsham established a link between Johnson and the firearm. The evidence the State presented was salient for its linking Johnson to the firearm used in the assault, not, as Johnsons argues, for suggesting unfairly a "propensity to engage in gun violence."

The evidence was admissible for its probative value notwithstanding the State's having other evidence that Johnson was the person who had assaulted Worsham. Decisions interpreting ER 404(b) clarify that evidence is both "relevant and necessary" if it is "of consequence to the action and makes the existence of the identified fact more probable." Powell, 126 Wn.2d at 259. Johnson points to no authority supporting the proposition that evidence is admissible under ER 404(b) only in the absence of other evidence that may be sufficient to prove the State's case. Rather, we understand Johnson to argue that the State's having other evidence lessens the import of the January 2020 evidence, thereby making its probative value more readily outweighed by any unfair prejudice. Nevertheless, the relevance of expert testimony comparing the spent shell casings was directly probative that Johnson was the person who possessed a firearm and committed the assault on October 12, 2019. Contrary to Johnson's argument, the evidence

establishing Johnson's link to the gun recovered in Belltown was neither "cumulative" nor of "minimal value."  Johnson does not show an abuse of discretion by the trial court in ruling the probative value of the evidence was not outweighed by any unfair prejudicial effect and the record does not suggest that the jury was invited to find Johnson guilty because of his propensity to be involved in shootings or be near firearms.

For the first time on reply, Johnson further argues that the trial court erred by failing to conduct the required analysis under ER 404(b) or make the four specific findings on the record required by the Washington Supreme Court. Johnson's opening brief argued only that the unfair prejudice of the evidence outweighed its probative value.  Because Johnson raises the lack of all four necessary findings for the first time on reply, we decline to reach that argument. RAP 10.3(c); Ainsworth v. Progressive Cas. Ins. Co., 180 Wn. App. 52, 78 n.20, 322 P.3d 6 (2014) ("We will not consider issues argued for the first time in the reply brief.  The reply brief is limited to a response to the issues in the responding brief. To address issues argued for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal." (citations omitted)).

III

Johnson argues that an amendment to the offender score provision of the Sentencing Reform Act of 1981 (SRA), RCW 9.94A.525, applies to his sentence and therefore, three juvenile convictions listed in his criminal history should be excluded from the calculation of his offender score.  See LAWS OF 2023, ch. 415 (Engrossed H.B. 1324).  Because the amending law does not indicate clear intent

for retroactive application, we conclude that former RCW 9.94A.345 (2000) and RCW 10.01.040 control and require that the "law in effect at the time of a crime must be applied to the imposition of sentence for that crime."

Former RCW 9.94A.345, a provision of the SRA, declares,

Any sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed.[3]

And RCW 10.01.040—referred to as a "saving clause statute," State v. Jenks, 197 Wn.2d 708, 719, 487 P.3d 482 (2021)—presumptively saves an amendment of a criminal or penal statute from affecting offenses already committed and provides, in relevant part,

Whenever any criminal or penal statute shall be amended or repealed, all offenses committed or penalties or forfeitures incurred while it was in force shall be punished or enforced as if it were in force, notwithstanding such amendment or repeal, unless a contrary intention is expressly declared in the amendatory or repealing act, and every such amendatory or repealing statute shall be so construed as to save all criminal and penal proceedings, and proceedings to recover forfeitures, pending at the time of its enactment, unless a contrary intention is expressly declared therein.

(Emphasis added.)

Our courts have consistently relied on these statutory provisions to conclude that amendments to the SRA do not apply to crimes that occurred before amendments were enacted. See Jenks, 197 Wn.2d at 714 (amendment removing second degree robbery from the list of strike offenses); State v. Ross, 152 Wn.2d 220, 237-40, 95 P.3d 1225 (2004) (amendment to provision reducing offender score for most drug offenses); State v. Kane, 101 Wn. App. 607, 610-19, 5 P.3d

---

[3] In 2021, the language of former RCW 9.94A.345 was amended but not substantively changed. LAWS OF 2021, ch. 286 § 2.

741 (2000) (amendment expanding eligibility for drug offender alternative sentence).

The amendment of RCW 9.94A.525 took effect on July 23, 2023. LAWS OF 2023, ch. 415, § 2; LAWS OF 2023, at ii (see (5)(a) setting out the effective date). It provides that "adjudications of guilt pursuant to Title 13 RCW which are not murder in the first or second degree or class A felony sex offenses may not be included in the offender score." RCW 9.94A.525(1)(b). Under RCW 9.94A.345 and 10.01.040 and controlling case law, this amendment does not apply to pending prosecutions for crimes committed before the amendment's effective date unless the legislature " 'fairly convey[s] that intention' " in the newly enacted statute. Jenks, 197 Wn.2d at 720 (quoting Ross, 152 Wn.2d at 238).

The amending law includes no express statement of intent for the amendment to apply retroactively. Johnson relies on the intent section, which identifies several purposes of the amendment:

> (1) Give real effect to the juvenile justice system's express goals of rehabilitation and reintegration;
>
> (2) Bring Washington in line with the majority of states, which do not consider prior juvenile offenses in sentencing range calculations for adults;
>
> (3) Recognize the expansive body of scientific research on brain development, which shows that adolescent's perception, judgment, and decision making differs significantly from that of adults;
>
> (4) Facilitate the provision of due process by granting the procedural protections of a criminal proceeding in any adjudication which may be used to determine the severity of a criminal sentence; and

> (5)  Recognize how grave disproportionality within the juvenile legal system may subsequently impact sentencing ranges in adult court.

LAWS OF 2023, ch. 415, § 1.  The legislature's explanation for changing the law and its recognition that the prior law was inconsistent in some respects with the goals of the juvenile justice system, does not fairly convey a specific intent for the law to apply to cases pending on appeal.

The legislative history runs against Johnson's argument.  When a bill initially includes a provision that is later stricken, the act of removing the provision from the final version of the bill indicates an intent by the legislature to exclude the stricken measure.  State v. Hirschfelder, 170 Wn.2d 536, 546-47, 242 P.3d 876 (2010).  Chapter 415, as introduced, included a right to resentencing for any offender sentenced with an offender score that included points for prior juvenile convictions.  H.B. 1324, § 3, 68th Leg., Reg. Sess. (Wash. 2023).  The legislature later struck the provision before passage.  See LAWS OF 2023, ch. 415.  Even recognizing Johnson's observation that striking a right to resentencing for all persons affected by prior juvenile dispositions does not necessarily refer precisely to cases not yet final due to the pendency of appeal, the actions of the legislature still point away from intent to avoid the application of RCW 9.94A.345 and 10.01.040.  See Jenks, 197 Wn.2d at 721 (legislature signaled intent that individuals should be sentenced in accordance with law at the time of the crime by removing provision requiring resentencing of individuals previously sentenced as persistent offenders premised on convictions of second-degree robbery).

Johnson argues the statements of legislative intent accompanying the amendments are similar to statements of intent indicating an intent to apply new law to pending cases in State v. Rose, 191 Wn. App. 858, 869, 365 P.3d 756 (2015). There, the State charged Rose with possession of cannabis and use of drug paraphernalia committed approximately six months before the people decriminalized Rose's acts under Washington law in Initiative 502. Id. at 861-62. The court held this was an instance of "the rare case" in which language short of explicitly displacing the effect of RCW 10.01.140 nevertheless fairly conveyed that intent. Id. at 871. The intent of the new law was to " 'stop treating' " Rose's activity as a crime to allow law enforcement to focus on different crimes. Id. at 868-69 (quoting Initiative 502). Because the law was an initiative enacted by the people, it was necessary to evaluate that language from the perspective of the average informed lay voter. Id. at 869. The voters' pamphlet statement likewise indicated "disapproval of continued prosecution of the offenses committed" by Rose. Id. at 870.

Johnson's case is distinguishable. First, the statements of intent on which he relies signal an intent to shift Washington law, and give reasons for doing so, but they do not signal a similar intent to " 'stop' " a particular practice to re-deploy the government's resources. The government's continued prosecution of Rose despite the people's signaled intention to stop such prosecutions in favor of other, more pressing crimes defeated the people's stated intent. The same is not true here, where there is no intent to stop prosecution of Johnson's crimes, but only to change the calculation of offender scores generally. The stated intent in this case

to bring Washington into a new approach lacks the suggested immediacy present in Rose to stop the former one. Second, the intent of Initiative 502 to decriminalize certain conduct altogether is a much stronger indication of intent to disapprove continuing prosecution than amending the sentencing scheme for conduct that remains criminal. Rose thus contrasts with Jenks, Ross, and Kane, which held that changes to the sentencing scheme did not displace sentencings imposed in accord with the law in effect at the time.

Johnson also relies on State v. Jefferson, 192 Wn.2d 225, 429 P.3d 467 (2018) (plurality opinion) and State v. Ramirez, 191 Wn.2d 732, 749, 426 P.3d 714 (2018), to argue that the amendment to RCW 9.94A.525 applies here because his case was still pending on appeal when the amendment took effect. Johnson interprets these cases as requiring legislative changes to apply to cases pending on appeal when a " 'precipitating event' " takes places after the amendment's effective date, and he contends that the termination of his direct appeal is that event. Ramirez, 191 Wn.2d at 749 (quoting State v. Blank, 113 Wn.2d 230, 248, 930 P.2d 1213 (1997)).

Ramirez addressed changes to statutes governing legal financial obligations and determined that because the amendments pertained to "costs imposed upon conviction," id., that were not finalized until "the termination of all appeals," the amendments applied to cases pending on appeal, Jenks, 197 Wn.2d at 723. Jefferson held that GR 37, a rule governing the use of peremptory strikes that was not adopted until after Jefferson's trial, did not apply to Jefferson's case that was pending on appeal because the precipitating event was voir dire.

Jefferson, 192 Wn.2d at 243, 249. But both cases have been distinguished from sentencing. Jenks declined "to extend" Ramirez to a provision amending the SRA and confined its holding to the "narrow subject matter of 'costs imposed upon conviction.' " Jenks, 197 Wn.2d at 723 (quoting Ramirez, 191 Wn.2d at 749). And this court has concluded that Jefferson, while including "expansive language" about the applicability of new statutes and amendments to cases pending on appeal, did not involve a sentencing statute and its applicability in that context is "limited." State v. Molia, 12 Wn. App. 2d 895, 902, 460 P.3d 1086 (2020). In accordance with cases focused on sentencing changes, the more natural "precipitating event" for the determination and application of an offender score is sentencing, not the termination of the action triggering cost shifting.

We conclude that there is no clear legislative intent to apply the 2023 amendments to the offender score provision to Johnson's case. While this necessarily means that there will be individuals who do not benefit from the amended law, we do not agree with Johnson that the law will fail to "remedy the injustice" it was enacted to address. It will do so going forward as RCW 9.94A.345 and 10.01.140 direct as the general rule. See Jenks, 197 Wn.2d at 711 (recognizing that "[a]lthough the outcome is harsh, the legislature commands [the] result.").

IV

Johnson contends that remand is required to strike the $500 VPA imposed as a mandatory fee at the time of sentencing based on new legislation. State v.

Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023).  The State concedes that remand to strike the VPA is appropriate.  We accept the State's concession.

V

We remand to strike the VPA from Johnson's judgment.  We otherwise affirm Johnson's convictions and sentence.

Birk, J.

WE CONCUR:

Smith, C.J.

Mann, J.