IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 39719-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL LEE SUMMA, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

COONEY, J. — Michael Summa was charged with possession of a controlled substance with intent to deliver and first degree unlawful possession of a firearm. Following a jury trial, Mr. Summa was acquitted of the drug charge and convicted of the firearm charge. Mr. Summa appeals, arguing the trial court erred when it dismissed venire juror 17 for cause. We affirm Mr. Summa's conviction but remand for the trial court to strike the crime victim penalty assessment (VPA).

BACKGROUND

The State charged Mr. Summa with first degree unlawful possession of a firearm and possession of a controlled substance with intent to deliver. The case proceeded to trial in late February 2023. During jury selection, the court gave numerous instructions to the venire, among which was to "not withhold any information in order to be seated on this particular jury." Rep. of Proc. (Feb. 27, 2023) (RP) at 27. After informing the venire of Mr. Summa's charges, the court offered:

> If you're uncomfortable answering any particular question in front of the other jurors or if you're uncomfortable answering it as a group, please notify my judicial assistant, and we will discuss another way to handle that question.

RP at 32.

Later, the court questioned the venire:

> [H]ave any of you had a personal experience with a similar or related type of case? This is an unlawful possession of a firearm and a possession with intent to deliver either as a victim, a witness or one accused kind of a similar type situation?
>     Okay. How about close friends or relatives with a similar or related type of incident either as a victim, a witness or one accused?

RP at 53. Four prospective jurors answered in the affirmative. Venire juror 17 did not respond to this question. After questioning the jurors who responded to the first inquiries, the court provided another opportunity for a response: "How about anybody else? Did I miss any hands?" RP at 56. The court did not receive any further responses.

During the State's voir dire, the following exchange occurred with venire juror 17:

2

[STATE]: . . . So, again, we all know this is time consuming. You got other stuff that you can be doing, but, again, thank you. So to begin with, I just want to ask has anyone themselves or know people that have struggled with addiction? Number 17, could you kind of elaborate on your experience, please?

PROSPECTIVE JUROR NO. 17: My mom and my dad were.

. . . .

My mom and dad were in addiction a very long time, and they just got clean two years ago.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 17: My dad is currently in drug court, and he's almost completed drug court. So I'm very proud.

[STATE]: So how about yourself?

PROSPECTIVE JUROR NO. 17: Yeah, I've been addicted to drugs, too. So when I got clean, that's the time my parents decided to get clean, too. They didn't want me to do it myself, and I've been clean two and a half years now.

[STATE]: What led you to decide to get clean?

PROSPECTIVE JUROR NO. 17: I just didn't like the way my life was going downhill, and I decided to stop at a young age, and it was just too much for me to handle.

[STATE]: Do you mind elaborating on kind of what was going on that made it too much?

PROSPECTIVE JUROR NO. 17: I got kicked out of my house. I was living in a trailer that had no electricity, no water. I was kind of like in a toxic relationship with somebody older than me, and I just felt like I wasn't myself anymore.

[STATE]: So you said your dad is currently in drug court. Have you ever had similar circumstances where your addiction got you involved with the legal system?

PROSPECTIVE JUROR NO. 17: What do you mean?

[STATE]: Have you been charged before?

PROSPECTIVE JUROR NO. 17: Yeah, when I first turned 18.

[STATE]: And what happened, ma'am?

PROSPECTIVE JUROR NO. 17: Well, I had pled guilty, and then I got the charges dropped I think after the Blake law passed or something.

[STATE]: Okay. So was that your only instance with the law?

PROSPECTIVE JUROR NO. 17: Yes—no, that was my first charge of substance abuse, and then my second charge was a material witness that I sat six months in jail for.

[STATE]: So I'm able to see what you put on the questionnaire. So you indicated you had some issue with eluding?

PROSPECTIVE JUROR NO. 17: Yes.

[STATE]: Could you describe what was going on there, please?

PROSPECTIVE JUROR NO. 17: So I was—I didn't want to go back to jail for the material witness case, and I had got released from court to go to appear back in court, and I didn't want to go back to court. So I was driving this car, and I seen the cops behind me, and I was scared to go back to jail.

[STATE]: Okay.

PROSPECTIVE JUROR NO. 17: And I eluded the cops.

[STATE]: Thank you. You can go ahead and have a seat, ma'am. Thank you.

RP at 63-66.

Shortly thereafter, the State asked if any member of the venire was excited to serve on a jury. Venire juror 17 responded, stating "I mean, a little bit. My mom was trying to tell me no. I want to try something I've never tried before." RP at 66.

Following voir dire, the State, citing "implicit bias," moved to strike venire juror 17 for cause:

[STATE]: I'm moving for 17 and 27. I know one at a time, but the issue is the same for both.

Your Honor, State has concerns about implicit bias. As indicated by their veracity, I believe Your Honor asked both of them during your questions whether or not they both had experience with the justice system. They both indicated no and then essentially took cross examination to get both of them to acknowledge. I do think this bias would come through in their deliberations.

4

THE COURT: Let's start with Number 17. That was the first one you mentioned. GR [3]7 would come into play. Does defense want to be heard?

[DEFENSE COUNSEL]: That was my concern, as well. I'm not sure there's enough for cause, but I was concerned that she might not be eligible to be a juror—

[STATE]: That, too.

[DEFENSE COUNSEL]: —given the conviction, but I don't think there was any indication, at least my notes don't say that she couldn't be fair and impartial. So I leave it to the Court's discretion.

THE COURT: My concern she said there were similar circumstances that got her involved in the court system that she didn't mention any of the similar. It didn't concern me that she didn't bring that up, but all in the beginning.

I did note that she said she, also, had been addicted, that her father was in drug court. So that kind of concerned the Court, and then when you asked her further, there was a lot more that didn't come out. So that concerns the Court that she didn't mention it. I do note that GR 37, and I'm just guessing, that she may be American Indian from looking at her. I don't really know. I don't want to just stereotype. It makes it very hard when GR 37 sometimes they're names[sic], but they don't look like it.

So I'm going off what she said, and it concerns the Court that she talked about an addiction, that she's been through the court system several times, that both her mom and dad and that she had similar circumstances, but didn't think to mention it kind of at the beginning.

So based on that, I think there's enough at this point to strike her for cause and noting that GR 37 would apply, but that the Court based on what the Court heard, there's enough to throw her off for cause.

RP at 95-96.[1]

---

[1] The trial court attempted to apply GR 37 to the State's motion. We note the applicability of GR 37 solely to peremptory challenges, not motions to strike for cause under RCW 4.44.170, .180, or .190.

It is unclear from the record whether venire juror 17 is Native American. The only reference to venire juror 17's race was the trial court's statement that it was "just guessing, that she may be American Indian from looking at her. I don't really know." RP at 96. The prospective juror's surname does little to assist in making such a

Ultimately, the jury found Mr. Summa guilty of first degree unlawful possession of a firearm and not guilty of possession of a controlled substance with intent to deliver. Mr. Summa was sentenced to 75 months of confinement. Although the court found Mr. Summa indigent, he was ordered to pay a $500 VPA fee.

Mr. Summa timely appeals.

### ANALYSIS

Mr. Summa argues the trial court erred when it dismissed venire juror 17 for cause. He contends venire juror 17 was objectively identifiable as Native American and a failure to seat her deprived him of a racially diverse jury. The State argues that Mr. Summa failed to preserve this claim when he did not object to the State's motion challenging venire juror 17 for cause. We agree with the State.

Mr. Summa failed to raise his challenge related to the dismissal of venire juror 17 at the trial court level. Because Mr. Summa is challenging the dismissal for the first time on appeal, he must make a showing that satisfies the requirements of RAP 2.5. RAP 2.5(a) allows an appellate court to "refuse to review any claim of error which was not raised in the trial court." The purpose of RAP 2.5 is to both give the opposing party a chance to respond and to allow the trial court a chance to correct the error. 2A KARL B.

---

determination.

6

TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 1, at 233 (7th ed. 2011).

Howbeit, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). For us to accept review under RAP 2.5(a)(3), the appellant must demonstrate that the error is manifest and that the error is "truly of constitutional dimension." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). An error must result in actual prejudice for it to be manifest. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). Actual prejudice means the asserted error must have had practical and identifiable consequences in the trial of the case. *Id*.

"[T]o determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." *Id.* at 100. An alleged error is not manifest if the trial court could not have foreseen the potential error or if the record on appeal does not contain sufficient facts to review the claim. *Id*.

Mr. Summa's claimed error is inadequately preserved under RAP 2.5 because the asserted error is neither constitutional nor manifest. Consequently, we decline review.

The Sixth and Fourteenth Amendments to the United States Constitution, as well as article I, section 22 of the Washington Constitution, guarantee a criminal defendant the right to trial by an impartial jury. *Taylor v. Louisiana*, 419 U.S. 522, 526, 95 S. Ct. 692,

42 L. Ed. 2d 690 (1975). However, as our Supreme Court declared in *State v. Phillips*, a defendant lacks a vested right in any particular juror:

> No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause, until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless, through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created. Thus, in the process of impaneling, no party is entitled, as of right, to have the first juror sit who has the statutory qualifications…

65 Wash. 324, 326-27, 118 P. 43 (1911) (citing 1 THOMPSON ON TRIALS, § 120)(italics omitted). In other words, a defendant does not have a constitutional right to have a particular juror sit for their trial. Mr. Summa's constitutional right to trial by an impartial jury was not implicated nor was it violated.

Even if we were to conclude Mr. Summa's asserted error was of constitutional dimension, he fails to establish the alleged error was manifest. In support of his contention that the trial court erred in dismissing a perceived Native American prospective juror, Mr. Summa claims, "It is well established that '[m]ore diverse juries result in fairer trials.'" Br. of Appellant at 15 (citing *State v. Saintcalle*, 178 Wn.2d 34, 50, 309 P.3d 326 (2013)). Essentially, Mr. Summa argues he received a fair trial, but it could have been made *fairer* with the inclusion of venire juror 17. "'[I]f the [defendant] has been tried by an impartial jury, it would be nonsense to grant a new trial or a venire

8

de novo upon this ground, in order that he might be again tried by another impartial jury.'" *Phillips*, 65 Wash. at 327 (citing 1 THOMPSON ON TRIALS, § 120).

Mr. Summa has failed to demonstrate that the court's dismissal of venire juror 17 had any practical and identifiable consequences in the trial. The jury acquitted Mr. Summa following a robust defense of the possession of a controlled substance with intent to deliver charge. However, Mr. Summa effectively stipulated to the elements of first degree unlawful possession of a firearm.

First degree unlawful possession of a firearm has three elements: (1) that the defendant knowingly owned a firearm or knowingly had a firearm in his possession or control, (2) that the defendant had previously been convicted of a serious offense, and (3) that the ownership or possession or control of the firearm occurred in the State of Washington. RCW 9.41.040(1)(a). When questioned by his attorney at trial, Mr. Summa testified to possessing a firearm at the time of his arrest:

> Q When you were contacted by law enforcement, did you have anything other than meth on you?
> A Yes, I had a firearm.
> Q Why did you have a firearm?
> A I've been shot before, so.
> Q Are you supposed to have a firearm?
> A No.
> Q But you had one anyway?
> A Yes.

RP at 341. Mr. Summa stipulated that he had previously been convicted of a serious offense. Further, Mr. Summa agreed with Sergeant Darrell Quarles' testimony that he possessed the firearm near an apartment complex in Spokane, Washington.

Based on Mr. Summa's concessions, the trial court's dismissal of venire juror 17 had no identifiable consequences in the trial of the case. Mr. Summa all but admitted guilt.

Mr. Summa next contends that the VPA must be excised from his judgment and sentence due to recent changes in the law. The State concedes. We accept the State's concession.

Formerly, RCW 7.68.035(1)(a) (2018) required the imposition of a VPA on any adult found guilty of a crime in superior court. On July 1, 2023, an amendment to RCW 7.68.035 went into effect, requiring trial courts to refrain from imposing a penalty assessment if, at the time of sentencing, the defendant was found to be indigent as defined in RCW 10.01.160(3). *See* LAWS OF 2023, ch. 449, §§ 1, 4. Amendments to statutes which impose costs upon conviction apply to cases pending on appeal. *See In re Pers. Restraint of Eastmond*, 173 Wn.2d 632, 638, 272 P.3d 188 (2012); *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018).

Mr. Summa's case is pending direct appeal, and the State has conceded Mr. Summa has been found indigent. We remand for the trial court to strike the VPA from Mr. Summa's judgment and sentence.

No. 39719-0-III
*State v. Summa*


CONCLUSION

We affirm Mr. Summa's conviction but remand for the limited purpose of striking

the VPA from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.


_____
Cooney, J.


I CONCUR:


Lawrence-Berrey, C.J.

11

No. 39719-0-III

FEARING, J. (concurring) — I concur in the majority's affirmation of the conviction on the firearm charge. Summa did not challenge, during voir dire, the removal of prospective juror 17, but rather left the decision to the discretion of the superior court. Thus, Summa must show manifest constitutional error on appeal for this court to entertain any error. He does not argue manifest constitutional error, such that the majority need not have addressed this error.

_Fearing, J._
Fearing, J.